PAUL B. SCHOFIELD v. THE GREAT ATLANTIC AND PACIFIC
TEA CO., INC.

No. 7626IC755

(Filed 16 March 1977)

1. **Master and Servant § 77— workmen's compensation — change of con-
dition — maximum improvement not reached — sufficiency of evidence**

    In a proceeding under the Workmen's Compensation Act in which
    plaintiff sought additional compensation from defendant, his employer,
    testimony by the doctors who treated plaintiff was sufficient to
    support findings of fact by the Industrial Commission that: (1)
    plaintiff had a change of condition for the worse and again became
    temporarily totally disabled on 19 July 1974, over two years after the
    accident giving rise to the injury; (2) plaintiff has remained tem-
    porarily disabled since that date; (3) at the time of the hearing before
    the Industrial Commission, which took place on 1 April 1976, plaintiff
    was still temporarily totally disabled; and (4) plaintiff has still not
    reached maximum improvement or the end of the healing period.

2. **Master and Servant § 75— workmen's compensation — medical expenses
— purpose of incurring — sufficiency of evidence**

    Evidence was sufficient to support the finding of the Industrial
    Commission that treatment obtained by plaintiff after his condition
    changed for the worse on 19 July 1974 was obtained with a view of
    tending to lessen plaintiff's period of disability, and the Commission
    properly concluded that defendant was responsible for the payment
    of all medical expenses incurred by plaintiff since 19 July 1974.

APPEAL by defendant from award of the North Carolina
Industrial Commission filed 12 July 1976. Heard in the Court
of Appeals 17 February 1977.

This is a proceeding under the Workmen's Compensation
Act in which plaintiff seeks additional compensation from de-
fendant, his employer.

A hearing was held by Chief Deputy Commissioner Forrest
H. Shuford II at which time the parties made stipulations sum-
marized in pertinent part as follows:

At the time of the alleged injury the parties were subject
to and bound by the provisions of the North Carolina Work-
men's Compensation Act; defendant was a duly qualified self-
insurer under the act.

On 29 April 1972, while plaintiff was employed by defend-
ant in a meat department of one of its stores, plaintiff sustained

an injury by accident arising out of and in the course of his employment when he twisted his knee while carrying some meat. The parties entered into an "Agreement for Compensation" on Form 21 dated 20 September 1973, and said agreement was submitted to and approved by the Industrial Commission on or about 3 October 1973. Plaintiff's average weekly wage was $188 and his weekly compensation rate was $56.

Following his accident plaintiff worked until 12 June 1972. At that time he began to miss work and draw sick pay compensation under defendant's sick pay plan; and, until 8 June 1974 he received weekly the higher amount of the sick pay compensation or workmen's compensation for temporary total disability. Over a period of 104 weeks he received $8,423. In addition to said amount defendant paid all medical expenses incurred by plaintiff and approved by the commission from the date of the accident until 1 June 1974, the amount being $4,831.95.

Plaintiff was treated by Doctors Carr and Wrenn of the Miller Clinic, Inc., in Charlotte, N. C. As a result of an examination on 9 April 1974 Dr. Carr reported:

" . . . He certainly is totally unable to do his job as a butcher and may be permanently so. He has 50 percent permanent partial disability in his leg right now, and the prognosis for improvement is questionable or at least guarded. The diagnosis is traumatic arthritis of the left knee with traumatic osteochondrosis of the knee and chronic hypertophic synovitis of the knee. He will be back in one month to see us as a follow-up on the knee. I do not feel that total knee replacement and/or arthrodesis of the knee is indicated at all. . . . "

Dr. Carr saw plaintiff again on 5 June 1974 and did not report any change from the above quotation. Defendant concluded that plaintiff had reached his maximum improvement by 5 June 1974 and advised plaintiff that it was willing to pay permanent partial disability to him based upon Dr. Carr's rating of 50 percent of the knee, but that it was unwilling to pay any further medical expenses incurred by him.

When plaintiff failed to accept the 50 percent rating and to sign a supplemental memorandum of agreement, defendant began to reflect the compensation payments made after 8 June 1974 as payments toward the permanent partial disability to which he has become entitled under the act.

Schofield v. Tea Co.

Defendant has paid to plaintiff during the period from 9 June 1974 to 26 March 1976 (94 weeks at $56 per week) the additional sum of $5,264 toward the 50 percent permanent partial disability of the leg. Defendant has not paid any medical expenses incurred by plaintiff since 8 June 1974.

Plaintiff contends (a) that he has permanent partial disability to his left leg greater than the aforesaid 50 percent rating by Dr. Carr, and (b) that defendant should be required to pay his medical expenses incurred since June 1974.

Defendant contends (a) that plaintiff reached maximum improvement by 8 June 1974; (b) that he is entitled to comsátion for permanent partial disability based on Dr. Carr's 50 percent rating to his leg and no higher rating; and (c) that it is not required under the act to pay any additional medical expenses as such medical treatment did not tend to lessen his disability and was unnecessarily incurred without approval of defendant or the commission.

The hearing commissioner's findings of fact are summarized as follows:

Plaintiff reached maximum improvement from his injury by accident on 9 April 1974 at which time he was rated as having sustained a 50 percent permanent partial disability of his left leg. However, plaintiff had a change of condition for the worse and again became temporarily totally disabled on 19 July 1974. Since 19 July 1974 plaintiff has undergone additional medical and surgical treatment with a view of tending to lessen his "increased permanent disability" (changed by full commission to "period of disability").

Plaintiff developed complications following such additional treatment and "has remained temporarily total (sic) disabled since 19 July 1974." As of the time of the hearing plaintiff was still temporarily totally disabled as a result of his injury by accident and complications arising therefrom. As of the date of the hearing on 1 April 1976 plaintiff still had not reached maximum improvement or the end of the healing period.

The hearing commissioner's conclusions of law are as follows:

　　1. As a result of the injury by accident giving rise hereto plaintiff sustained a change of condition for the

Schofield v. Tea Co.

worse as of 19 July 1974 and has not reached the end of the healing period or maximum improvement from his injury as of the date of the hearing of this case on 1 April 1976. Plaintiff is entitled to compensation for temporary total disability at the lawful rate of $56.00 per week commencing 19 July 1974. The payment of such compensation for temporary total disability should continue until plaintiff reaches maximum improvement or the end of the healing period or until he has a change of condition.

G.S. 97-29; G.S. 97-31; G.S. 97-47.

2. Defendant is responsible for the payment of all medical expenses incurred as a result of the injury by accident giving rise hereto and is responsible for the payment of any additional medical treatment which will tend to lessen plaintiff's disability. G.S. 97-25.

3. The payment of compensation made to plaintiff by defendant for the period 9 April 1974 to 19 July 1974 should be credited against compensation which may be hereafter due plaintiff for permanent partial disability of the left leg. G.S. 97-31 (15) (19).

The hearing commissioner ordered, in pertinent part, that the payment of compensation to plaintiff for the period 9 April 1974 to 19 July 1974 be credited as payment to plaintiff of compensation for permanent partial disability which hereafter may be due plaintiff; that defendant pay plaintiff compensation for temporary total disability at the rate of $56 per week commencing 19 July 1974, which payment for temporary total disability shall continue until such time as plaintiff reaches maximum improvement or the end of the healing period or until he has a change of condition, but the total period covered by such compensation shall not exceed 400 weeks from the date of the accident; that defendant pay all unpaid medical expenses incurred as a result of the injury by accident when bills for same shall have been submitted to and approved by the Industrial Commission; and defendant shall be responsible for the payment of additional medical expense which shall tend to lessen plaintiff's disability.

Defendant appealed to the full commission who adopted as its own, and affirmed, the opinion and award of the hearing commissioner except for changing the words "increased permanent disability" in the findings of fact to "period of disability."

Defendant appealed to the Court of Appeals.

*R. A. Collier for plaintiff appellee.*

*Caudle, Underwood & Kinsey, by Lloyd C. Caudle and John H. Northey III, for defendant appellant.*

BRITT, Judge.

[1]  Defendant assigns as error the findings of fact and conclusions of law that plaintiff is entitled to compensation for further temporary total disability since 19 July 1974 because he then suffered a change of condition for the worse and has not reached the end of the healing period or maximum improvement. Specifically, defendant contends that the findings (1) that plaintiff had a change of condition for the worse and again became temporarily totally disabled on 19 July 1974, (2) that he has remained temporarily disabled since that date, (3) that at the time of the hearing [1 April 1976] he was still temporarily totally disabled, and (4) that he has still not reached maximum improvement or the end of the healing period, are not supported by sufficient evidence; and that conclusion of law number 1 stated above and the order for defendant to pay compensation and medical expenses based thereon are erroneous. We find no merit in the assignment.

At the outset we begin with the principle, well established in this jurisdiction, that the Workmen's Compensation Act should be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow, and strict interpretation. *Cates v. Construction Co.,* 267 N.C. 560, 148 S.E. 2d 604 (1966) ; *Guest v. Iron and Metal Co.,* 241 N.C. 448, 85 S.E. 2d 596 (1955) ; *Henry v. Leather Co.,* 231 N.C. 477, 57 S.E. 2d 760 (1950).

The heart of defendant's contention is that Dr. Carr, in the portion of his letter of 9 April 1974 quoted in the stipulations set forth above, gave plaintiff a rating of 50 percent permanent partial disability in his left leg, and there was not sufficient evidence to support a finding that plaintiff had a change of condition for the worse and again became temporarily totally disabled on 19 July 1974. This contention makes a brief review of the evidence relating to plaintiff's medical treatment necessary.

While both parties find comfort in portions of Dr. Carr's testimony, it was the perogative of the commission to find the facts from conflicting evidence. Portions of his testimony most favorable to plaintiff tended to show:

Plaintiff was referred to Dr. Carr in September 1972 by a Statesville physician who performed surgery on plaintiff's knee on 13 June 1972. In that surgical operation a loose torn cartilage was removed but the knee continued to give plaintiff trouble; fluid accumulated and plaintiff endured considerable pain. After prescribing extensive physical therapy for plaintiff and seeing him on numerous occasions over a period of some five months, Dr. Carr performed surgery on the knee on 13 February 1973. At that time Dr. Carr found that plaintiff had fragments of the medical miniscus caught up behind the condyle in a cul-de-sac, an area not seen by the original operating surgeon. Plaintiff remained in the hospital for nine days following this surgery, and from then until August 1973 he was treated as an outpatient at the hospital in Statesville with physical therapy and was seen monthly by Dr. Carr.

As of August 1973 plaintiff was still limping, suffering considerable pain when weight was put on the leg and his progress was unsatisfactory. Dr. Carr then consulted his associate Dr. Wrenn and later on they decided that further surgery, a tribial osteomoty, was advisable. They performed the operation on 6 November 1973 after which Dr. Wrenn, due to a lengthy absence by Dr. Carr, took charge of the case until April 1974.

On 9 April 1974 Dr. Carr saw plaintiff and reviewed Dr. Wrenn's notes covering the period of time Dr. Carr was absent. It was then that Dr. Carr wrote the letter rating plaintiff's permanent leg disability at 50 percent. In his testimony Dr. Carr stressed the clause that the prognosis was questionable, stating: "I did not attempt to say that he had reached his maximum point of recovery because I said permanent partial disability in his leg now and prognosis for improvement is questionable, at least partly guarded . . . . "

Dr. Carr saw plaintiff again in May 1974. Regarding this visit he described plaintiff thusly: " . . . He was worried, mentally distressed, quite depressed. He had lost 30 pounds of weight. He was still using crutches and from then on the next month, he was even worse symptomatically. He had some fluid in it, and that was removed on the 5th of June and he came

back in July." He saw plaintiff again on 10 July 1974 at which time plaintiff "certainly was not improved." He then consulted with Dr. Wrenn regarding the possibility of replacing plaintiff's knee joint with an artificial knee and at that point turned the case over to Dr. Wrenn.

Dr. Wrenn's testimony is summarized in pertinent part as follows:

He examined plaintiff in July 1974 for "reevaluation of his situation." He concluded that the only chance for plaintiff to receive relief would be to undergo a total knee replacement procedure by which the joint surfaces of the thigh bone and shin bone are removed and replaced with artificial ones. That operation was accomplished on 30 August 1974 but did not give plaintiff relief.

In December 1975 further surgery was performed at which time plaintiff's knee cap was removed after which plaintiff contracted a wound infection. He was readmitted to the hospital in February 1976 where he remained some six weeks with a knee infection. As of the date of the hearing the infection was clearing up slowly but none of the surgical procedures had produced the desired results.

With respect to plaintiff's maximum point of recovery, Dr. Wrenn stated that he did not know but "I have hope it will improve." He rated plaintiff's leg disability at 80 percent and stated that the operation in August 1974 was intended to lessen plaintiff's disability.

The findings of fact of the Industrial Commission are conclusive on appeal when they are supported by any competent evidence, even though there is evidence that would support a contrary finding. 5 Strong, N. C. Index 2d, Master and Servant, § 96, p. 484. We hold that the findings of fact challenged by this assignment are supported by sufficient evidence and that the conclusion of law and order predicated thereon are not erroneous.

[2]  By its second assignment of error defendant contends the finding of fact and conclusion of law adopted by the commission that defendant is responsible for the payment of all medical expenses incurred by plaintiff since 19 July 1974, said medical treatment having been obtained by him with a view of tending

---

Schofield v. Tea Co.

---

to lessen his period of disability, are not supported by sufficient evidence. This assignment is without merit.

G.S. 97-25 provides in pertinent part that "[m]edical, surgical, hospital, nursing services, medicines . . . and other treatment . . . as may reasonably be required to effect a cure or give relief and for such additional time as in the judgment of the Commission will tend to lessen the period of disability, . . . shall be provided by the employer. . . . "

Defendant argues that plaintiff reached maximum improvement in April 1974 and that it was not required to furnish experimental medical treatment in the absence of evidence supporting a finding that the treatment would tend to lessen disability, and which treatment even with a good result could only bring a "hope it would lessen" plaintiff's complaint.

While reviewing in retrospect the medical treatment received by plaintiff one might conclude that he would have been better off had he received no surgical treatment after July 1974, we must consider his situation at that time. When Dr. Carr saw plaintiff in May 1974 he was mentally distressed, had lost 30 pounds and was having to use crutches. As of 10 July 1974 plaintiff was not improved. The medical testimony discloses that while physical therapy administered prior to that time considerably improved the flexibility of plaintiff's knee area, nothing that was done made it possible for plaintiff to put more than a minimum of weight on his leg. The accumulation of fluid, accompanied by considerable pain in the knee area persisted.

As stated above, Dr. Wrenn testified that while he did not *know* if the surgical operations would result in improvement, he had hopes that they would and that they were intended to lessen plaintiff's disability.

We hold that the challenged finding of fact is supported by sufficient evidence and that the commission was authorized to require defendant to pay for the additional medical treatment. G.S. 97-25.

For the reasons stated, the award appealed from is

Affirmed.

Judges HEDRICK and CLARK concur.