PAUL B. SCHOFIELD v. THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., SELF-INSURED

No. 28

(Filed 1 April 1980)

1. **Master and Servant § 75— workmen's compensation—employer's inability to provide medical services—employee's selection of doctor—expenses covered**

Under G.S. 97-25 an employee is justified in seeking treatment by a physician other than the one selected by the employer in an emergency where the employer's "failure to provide" medical services amounts merely to an inability to provide those services; therefore, plaintiff was confronted with an emergency and was forced to call on another physician on account of the employer's inability to provide medical services where the evidence tended to show that plaintiff was in Reidsville at 11:00 p.m. on a Friday night while the doctors who had been selected by defendant and who had been treating plaintiff were in Charlotte; plaintiff's knee had swollen to four times its normal size and was exuding pus; plaintiff was about to lose his leg or his life; and defendant's disclaimer of responsibility for medical services made nearly two years prior to the emergency treatment in question amounted to a wilful "failure to provide" medical services which justified plaintiff's seeking of treatment by his own doctor.

Schofield v. Tea Co.

2. **Master and Servant § 75— workmen's compensation—emergency—employee's selection of doctor—medical expenses covered**

There was no merit to defendant employer's contention that, even if plaintiff employee was confronted with an emergency, such emergency did not last for the seventeen months he was treated by a physician of his own choosing and defendant should be liable only for medical expenses for the period of the actual emergency, since an injured employee has the right to procure, even in the absence of an emergency, a physician of his own choosing, subject to the approval of the Industrial Commission.

3. **Master and Servant § 75— workmen's compensation—substituted physician —notice to Industrial Commission**

G.S. 97-25 requires an injured employee to obtain approval of the Industrial Commission within a reasonable time after he has selected a physician of his own choosing to assume treatment, and there was no merit to plaintiff's contention that the Industrial Commission was without jurisdiction to receive notice during the seventeen month period of plaintiff's treatment because, for most of that period, the claim involving defendant's disclaimer of liability was in the process of appellate review and thus within the jurisdiction of the appellate courts, since an appeal from the determination of a controversy between employer and employee does not operate to divest the Industrial Commission of its administrative powers, and therefore does not suspend that agency's authority to accept notification of an employee's decision to select his own doctor.

4. **Master and Servant §§ 75, 94— workmen's compensation—emergency medical treatment—substituted physician—findings required**

Before approving the cost of emergency treatment rendered by a physician other than the one provided by an employer, the Industrial Commission must make findings, based upon competent evidence, relative to the duration of the emergency, and the Commission must make findings as to whether approval of the injured employee's own doctor by the Commission was sought in this case within a reasonable time.

5. **Master and Servant §§ 75, 94— workmen's compensation—medical expenses —substituted physician—findings required for approval**

Upon submission of a claim for approval for medical treatment rendered by an employee's own physician, there must be findings based upon competent evidence that the treatment was required to effect a cure or give relief, or where additional time is involved, that it has tended to lessen the period of disability; and there should also be findings that the condition treated is, or was, caused by or was otherwise traceable to or related to the injury giving rise to the compensable claim.

ON appeal from the decision of the Court of Appeals, reported in 43 N.C. App. 567, affirming the order of the Industrial Commission which affirmed the findings and award of Deputy Commissioner Rush, entered 12 June 1978.

On 29 April 1972 plaintiff suffered a knee injury arising out of and in the course of his employment with defendant. Defendant, a self-insurer, provided medical care under the Workmen's Compensation Act, and plaintiff was treated by Drs. Chalmers Carr and Richard Wrenn in Charlotte, North Carolina. This treatment continued until 1976.

Based upon reports submitted by Dr. Carr, defendant concluded that plaintiff had reached his maximum improvement by 5 June 1974 and notified plaintiff on 3 September 1974 that it would not be responsible for any medical payments after 5 June 1974. Plaintiff requested a hearing before the North Carolina Industrial Commission. Chief Deputy Commissioner Forest Shuford conducted a hearing on the claim on 1 April 1976. An award was entered on 23 April 1976 holding defendant liable from and after 5 June 1974 for the cost of plaintiff's medical care which would tend to lessen plaintiff's disability.

On 12 July 1976, the Full Commission affirmed the findings and award of Deputy Commissioner Shuford; and the Court of Appeals affirmed the award. *Schofield v. Tea Co.*, 32 N.C. App. 508, 232 S.E. 2d 874 (1977). This Court denied defendant's petition for discretionary review on 3 May 1977. *Schofield v. Tea Co.*, 292 N.C. 641, 235 S.E. 2d 62 (1977).

On 9 April 1976, shortly after Chief Deputy Commissioner Shuford's initial hearing of the claim, plaintiff was at the home of his sister in Reidsville, North Carolina, when his knee worsened and became swollen. As a result of this condition, he obtained Dr. Frederick R. Klenner to treat the knee. Dr. Klenner testified in the present case regarding the condition of plaintiff's knee as follows:

I first became acquainted with Mr. Paul B. Schofield when he came to my office at 11:00 at night on Friday, April 9, 1976. His knee was swollen four times the normal size from an opening on top of the knee about eight inches by an inch and a half, and every time he flexed his knee, pus ran profusely as thick as a man's finger from the opening.

Dr. Klenner testified further that at that time plaintiff was in danger of losing his leg, if not his life.

Dr. Klenner began to treat plaintiff's knee with drugs and irrigation and continued treatment almost daily for a period of seventeen months. Dr. Klenner then found that the infection was "completely under control" and, in fact, had been "under control" after six months of treatment. He further stated that at that point plaintiff was ready for surgery, but that he did not refer plaintiff to a surgeon. At no time from 9 April 1976 until the summer of 1977 did plaintiff notify the Commission or defendant that he was undergoing treatment by a physician other than those provided by defendant.

At some point during the summer of 1977, and shortly after appellate review of plaintiff's previous claim had terminated with our denial of discretionary review, Dr. Klenner filed claim with the Industrial Commission seeking to recover $5,965 for medical treatment. Defendant contested these charges, and a hearing was held before Deputy Commissioner Rush on 18 January 1978. Dr. Klenner was the only witness to testify at the hearing.

In the Opinion and Award filed 12 June 1978, Deputy Commissioner Rush made the following Conclusions of Law:

The plaintiff was confronted with an emergency situation with respect to his knee condition due to the defendant employer's failure to provide medical care and due to the defendant employer's series of appeals, and he accordingly sought and received treatment from a doctor of his own choosing.

He, therefore, is entitled to have the reasonable cost of such medical services paid by the defendant employer. G.S. 97-25.

Based upon his findings of fact and conclusions of law, Deputy Commissioner Rush made an Award which contained the following language:

1. The defendant employer shall pay the medical expenses the plaintiff incurred as a result of the treatments he received from Dr. Frederick R. Klenner, when these bills shall have been submitted to and approved by the North Carolina Industrial Commission.

On 27 June 1978, defendant moved that the Opinion and Award be held in abeyance until the testimony of Dr. Frank Bassett of Duke Medical Center could be taken and considered. Deputy Commissioner Rush denied the motion by order filed 6 July 1978.

Upon appeal, the Full Commission affirmed as follows:

We are of the opinion that the findings of fact by the hearing commissioner as contained in the Opinion and Award filed June 12, 1978 are supported by the evidence and his conclusions of law are without prejudicial error. His decision is hereby adopted as the decision of the Full Commission. The result reached by him is hereby in all respects.

AFFIRMED.

The Court of Appeals, in an opinion by Judge Hill, Judge Erwin concurring, affirmed. Judge Vaughn dissented. Defendants appealed to this Court pursuant to G.S. 7A-30(2).

*Caudle, Underwood & Kinsey, by Lloyd C. Caudle and John H. Northey III, for defendant appellant.*

*R. A. Collier for plaintiff appellee.*

BRANCH, Chief Justice.

[1] Defendant first contends that the Commission erred in awarding medical expenses to Dr. Klenner because plaintiff was under the care of defendant's physicians just prior to the Reidsville incident and was therefore without authority to select his own physician. Plaintiff maintains that he was confronted with an emergency and thus was justified in procuring the services of Dr. Klenner.

The authorities in the area of Workmen's Compensation laws agree that, as a general rule,

an employer has the right, in the first instance, to select the physician, surgeon or hospital to treat and care for an injured employee, and when the employer exercises this right by seasonably providing a competent physician, surgeon or hospital to care for the employee, the employee may not without good cause refuse the services of the physician, sur-

Schofield v. Tea Co.

geon, or hospital proffered him, or seek the services of another.

W. Schneider, 10 *Workmen's Compensation Text* § 2005 (3d Ed. 1953); A. Larson, 2 *Workmen's Compensation Law* § 61.12 (1975); Annot., 7 A.L.R. 545 (1920); 82 Am. Jur. 2d "Workmen's Compensation" § 391 (1976). Generally, an employee is not at liberty to procure his own medical treatment at the expense of his employer, without the latter's knowledge and consent. Schneider, *supra* § 2001. However, there are at least three recognized exceptions to this rule. They are: (1) where the employer neglects or refuses to provide prompt and adequate services; (2) where the employee is confronted with an emergency; and (3) where the statute itself authorizes the employee to procure a physician of his own choosing. Larson, *supra*. Most of the compensation acts provide for some, if not all, of the three exceptions. *See e.g.*, Ga. Code Ann., § 114-501 (Cum. Supp. 1979); Mass. Gen. Laws Ann., Ch. 152 § 30 (1932).

Recognizing that Workmen's Compensation acts are creatures of the Legislature, we turn first to our own statutes to determine under what circumstances, if any, they permit an employee to procure his own medical treatment in lieu of that provided by his employer. The relevant statute, G.S. 97-25, reads as follows:

§ 97-25. *Medical treatment and supplies.* — Medical, surgical, hospital, nursing services, medicines, sick travel, rehabilitation services, and other treatment including medical and surgical supplies as may reasonably be required to effect a cure or give relief and for such additional time as in the judgment of the Commission will tend to lessen the period of disability, and in addition thereto such original artificial members as may be reasonably necessary at the end of the healing period shall be provided by the employer. In case of a controversy arising between the employer and employee relative to the continuance of medical, surgical, hospital, or other treatment, the Industrial Commission may order such further treatments as may in the discretion of the Commission be necessary.

The Commission may at any time upon the request of an employee order a change of treatment and designate other

treatment suggested by the injured employee subject to the approval of the Commission, and in such a case the expense thereof shall be borne by the employer upon the same terms and conditions as hereinbefore provided in this section for medical and surgical treatment and attendance.

The refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure when ordered by the Industrial Commission shall bar said employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Industrial Commission the circumstances justified the refusal, in which case, the Industrial Commission may order a change in the medical or hospital service.

If in an emergency on account of the employer's failure to provide the medical or other care as herein specified a physician other than provided by the employer is called to treat the injured employee, the reasonable cost of such service shall be paid by the employer if so ordered by the Industrial Commission: Provided, however, if he so desires, an injured employee may select a physician of his own choosing to attend, prescribe and assume the care and charge of his case, subject to the approval of the Industrial Commission.

The final paragraph of G.S. 97-25 clearly indicates that the Legislature contemplated the need, in an emergency, for an employee to seek the services of another physician. Defendant argues, however, that plaintiff's emergency was not "*on account of the employer's failure to provide*" medical treatment, since defendant's physicians were treating plaintiff just prior to the Reidsville incident. In our view, defendant's interpretation is unduly restrictive.

In the first place, we do not read the word "failure" to connote only a wilful refusal on the part of the employer to provide medical services. "Failure" means "[d]eficiency, want, or lack," *Black's Law Dictionary* 534 (5th Ed. 1979), and, in our view, an employee is justified under this statute in seeking another physician in an emergency where the employer's "failure to provide" medical services amounts merely to an *inability* to provide those services. In the present case, plaintiff was visiting his sister in

Reidsville, North Carolina, one hundred and fifty miles or more from defendant's physicians in Charlotte. At 11:00 on a Friday night, plaintiff sought medical treatment from a Reidsville doctor because "his knee was swollen four times the normal size . . . and every time he flexed his knee, pus ran profusely as thick as a man's finger from the opening." Common sense dictates that this was an emergency and that plaintiff was forced to call in another physician "on account of the employer's [inability] to provide" medical services. *Cf. Armstrong v. Allstate Insurance Co.*, 135 Ga. App. 278, 217 S.E. 2d 486 (1975) (applying identical statutory language).

Moreover, even assuming that defendant's rigid interpretation of "failure" were valid and that G.S. 97-25 required a refusal on the part of an employer before an employee could seek his own doctor, plaintiff would have been justified in doing so on the facts of this case. On 3 September 1974, defendant notified plaintiff that it would not be responsible for medical services after 5 June 1974. Plaintiff's emergency took place 9 April 1976, just after the hearing officer's initial hearing regarding defendant's disclaimer of responsibility. No findings or award had issued. Neither had a final order been entered. In light of defendant's disclaimer, plaintiff could not have known whether defendant would assume the financial responsibility of providing the treatment. Thus, in our view defendant's disclaimer amounted to a wilful "failure to provide" medical services.

[2] Defendant next contends that, even if plaintiff was confronted with an emergency situation on 9 April 1976 justifying Dr. Klenner's initial treatment, such emergency did not last for the entire seventeen months in which Dr. Klenner continued to treat plaintiff. Defendant maintains it should be liable only for medical expenses for the period of the actual emergency. On the other hand, plaintiff argues that the prolonged treatment was necessary to save his life and thus, was in the nature of an emergency. The Court of Appeals found that the continued treatment was justified by virtue of the proviso attached to the last paragraph of G.S. 97-25.

Our resolution of the question of whether, in the absence of an emergency, an employee may procure a doctor of his own choosing, must again rest with the language of the statute. The

second paragraph of G.S. 97-25 reads, in pertinent part, as follows: "The Commission may at any time upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee subject to the approval of the Commission . . . ." This language clearly authorizes a change of treatment upon the request of an employee, and presumably a change of treatment would encompass a change of physician.

The Court of Appeals, however, found statutory authorization for a change of physicians in the following underscored language:

If in an emergency on account of the employer's failure to provide the medical or other care as herein specified a physician other than provided by the employer is called to treat the injured employee, the reasonable cost of such service shall be paid by the employer if so ordered by the Industrial Commission: Provided, however, if he so desires, an injured employee may select a physician of his own choosing to attend, prescribe and assume the care and charge of his case, subject to the approval of the Industrial Commission. [Emphasis added.]

We note, initially, that the above proviso tends to confuse rather than enlighten. While the major portion of G.S. 97-25 was adopted in 1929, the proviso was added in 1933. 1929 N.C. Sess. Laws ch. 120, § 25; 1933 N.C. Sess. Laws ch. 506. By virtue of the connecting colon, the proviso appears to attach solely to the emergency provision and arguably only applies in an emergency. If this were so, however, the proviso would be redundant and mere surplusage, since the emergency clause already permits a change of physicians. It must be presumed, where the Legislature has amended a statute, that it intended to add to or to change the existing enactment. *Childers v. Parker's, Inc.*, 274 N.C. 256, 162 S.E. 2d 481 (1968). Moreover, words of a statute are not to be deemed merely redundant if they can reasonably be construed to add something to the statute which is in harmony with its purpose. *In re Watson*, 273 N.C. 629, 161 S.E. 2d 1 (1968).

Chapter 506 of the 1933 North Carolina Session Laws reads as follows:

AN ACT TO AMEND SECTION 25 OF CHAPTER 120 OF THE
PUBLIC LAWS OF 1929, RELATING TO CHOICE OF PERSON-
AL PHYSICIAN.

*The General Assembly of North Carolina do enact:*

Section 1. That section twenty-five of chapter one hun-
dred and twenty, Public Laws of one thousand nine hundred
and twenty-nine, be and the same is hereby amended by add-
ing to said section the following: "*Provided, however,* if he so
desires, an injured employee may select a physician of his
own choosing to attend, prescribe and assume the care and
charge of his case, subject to the approval of the Industrial
Commission."

We note first that the amendment itself does not include a
colon; nor is there any indication that the amendment attach sole-
ly to the final paragraph of G.S. 97-25. On the contrary, the
language of the Session Laws indicates that the proviso attaches
to the entire section of G.S. 97-25. Obviously, the connecting colon
was inserted inadvertently in the process of codifying the amend-
ment. Nevertheless, the certified transcript of a Session Law con-
trols over the statement of its contents as codified. *Wright v.
Casualty Co.,* 270 N.C. 577, 155 S.E. 2d 100 (1967). We therefore
hold that the proviso to G.S. 97-25 constitutes a proviso to the en-
tire section, and not solely to the emergency provision. Construed
in this light, the proviso clearly states that an injured employee
has the right to procure, even in the absence of an emergency, a
physician of his own choosing, subject to the approval of the Com-
mission.

[3] Defendant next contends that medical expenses should not
have been awarded because plaintiff notified neither the Commis-
sion nor defendant that he had selected his own physician to
assume treatment. Defendant concedes that an emergency, by its
very nature, would preclude the giving of notice prior to the com-
mencement of emergency treatment. Defendant maintains,
however, that even if plaintiff were authorized under the statute
to obtain his own doctor, he was required once the emergency ter-
minated at least to notify the Commission or defendant that he
had selected another doctor. Plaintiff contends, on the other hand,
that the statute itself provides only that an employee's selection
of a physician be "*subject to* the approval of the Industrial Com-

mission." Plaintiff thus argues that there is no requirement of *prior* approval, and further, that there is no time limit within which approval must be sought.

The Court of Appeals found no error in the Commission's approval of Dr. Klenner's claim and stated simply that "[t]here is no requirement that such approval must be in advance of the change —only that the change must be approved."

We agree that G.S. 97-25 imposes no requirement of notice or approval *prior* to an employee's procurement of his own physician. However, we cannot adhere to the expansive construction urged upon us by plaintiff and approved by the Court of Appeals.

In the case before us, plaintiff sought the services of Dr. Klenner on 9 April 1976. At that time, plaintiff was authorized under the statute's emergency provision to procure his own doctor. However, Dr. Klenner's treatment continued for a period of seventeen months, during which time neither he nor plaintiff made any attempt to notify defendant or the Commission.

In construing a statute, courts will not adopt an interpretation that results in palpable injustice when the statute is susceptible of another interpretation which is consonant with the purpose and intent of the act. *Little v. Stevens*, 267 N.C. 328, 148 S.E. 2d 201 (1966). In addition, "courts normally adopt an interpretation which will avoid absurd or bizarre consequences, the presumption being that the legislature acted in accordance with reason and common sense and did not intend untoward results." *Commissioner of Insurance v. North Carolina Automobile Rate Administration Office*, 294 N.C. 60, 68, 241 S.E. 2d 324, 329 (1978).

The Court of Appeals interpreted the statute as imposing no time limits whatsoever on the giving of notice or seeking of approval by an employee who changes physicians. Such a reading of the statute suggests that an employee may wait an indefinite period of time before obtaining authorization and approval from the Industrial Commission. However, it is inconceivable to us that the legislature intended to authorize an employee in this situation to give notice at his whim. Moreover, construing the statute as plaintiff urges would work a burden and an injustice on all parties involved. In fairness to everyone concerned, including the injured employee and his doctor, an employer who is subject to liability

for medical costs ought to be apprised of the fact, as soon as is practicable, that the employee is undergoing treatment and that he has procured a doctor of his own choosing to administer the treatment.

We therefore construe the statute to require an employee to obtain approval of the Commission within a reasonable time after he has selected a physician of his own choosing to assume treatment. In this case, plaintiff procured the services of Dr. Klenner during an emergency. Upon termination of the emergency, plaintiff should have given prompt notice that he was electing to have Dr. Klenner assume further treatment. Furthermore, as we construe the statute, plaintiff was required to obtain approval of the Commission within a reasonable time. We so hold.

Even so, plaintiff submits that the Industrial Commission was without jurisdiction to receive notice during the seventeen-month period of treatment, since, for most of that period, the claim involving defendant's disclaimer of liability was in the process of appellate review and thus within the jurisdiction of the appellate courts. According to plaintiff, Dr. Klenner was justified in waiting to submit his claim until jurisdiction was returned to the Industrial Commission following this Court's denial of defendant's petition for discretionary review in May, 1977. The Court of Appeals held that the Industrial Commission "lost its jurisdiction" while the case was on appeal, and thus there was no reason to give notice to or to file claim with the Commission during the pendency of the appeal. We disagree.

The Industrial Commission is primarily an administrative agency of the State, and its jurisdiction as an administrative agency is a continuing one. *McDowell v. Kure Beach*, 251 N.C. 818, 112 S.E. 2d 390 (1960); *Hanks v. Utilities Co.*, 210 N.C. 312, 186 S.E. 252 (1936). The Industrial Commission acts in a judicial capacity only in respect to a controversy between an employer and employee. *Hanks v. Utilities Co., supra.* The existence of such a controversy, or an appeal from the determination of such a controversy, does not operate to divest the Commission of its administrative powers. Obviously, an appeal of an award of the Industrial Commission does not suspend that agency's authority to accept notification of an employee's decision to select his own doctor; neither does an appeal deprive the Commission of its

jurisdiction to accept the submission of a claim. It may well be that the determination of the particular claim will be delayed until the outcome of the appeal. Nevertheless, the Commission has *jurisdiction* to receive the claim and is, in fact, the only agency vested with that jurisdiction. *Thomason v. Red Bird Cab Company*, 235 N.C. 602, 70 S.E. 2d 706 (1952).

Although we have concluded that plaintiff was statutorily authorized to seek medical services from a physician other than one provided by defendant, we are constrained to remand the case to the Industrial Commission for further findings.

[4] Under the statute, when a doctor is called to treat an employee in an emergency, the Industrial Commission may order the employer to pay the *"reasonable* cost of such service." Implicit in determining whether the cost of emergency treatment is reasonable is a determination of how long the emergency lasted. In this case, no evidence in the record tends to show the duration of plaintiff's emergency, and the hearing officer made no finding as to the length of the emergency. We therefore hold that, before approving the cost of emergency treatment rendered by "a physician other than provided by the employer," the Industrial Commission must make findings, based upon competent evidence, relative to the duration of the emergency. Additionally, in light of our holding today that an employee who procures his own doctor must obtain approval by the Commission within a reasonable time after such procurement, the Commission must make findings relative to whether such approval was sought in this case within a reasonable time.

Deputy Commissioner Rush also concluded that defendant was liable to pay for the medical services which Dr. Klenner provided following the termination of the emergency. Under G.S. 97-25, an employer must provide for medical treatment "as may reasonably be required to effect a cure or give relief and for such additional time as in the judgment of the Commission will tend to lessen the period of disability . . . ." The proviso which authorizes an employee to procure his own physician does not explicitly require that the physician's services be required "to effect a cure or give relief." Neither does the proviso require that the treatment or services "tend to lessen the period of disability." However, the provisions of G.S. 97-25 are *in pari materia* and

must be construed together as a whole. *See Duke Power Co. v. Clayton,* 274 N.C. 505, 164 S.E. 2d 289 (1968). Fairness requires that medical treatment provided by the employee's own doctor be subject to the same limitations, terms and conditions as apply to medical treatment provided by the employer. *See* G.S. 97-25 para. 2.

[5] We therefore hold that, upon submission of a claim for approval for medical treatment rendered by the employee's own physician, there must be findings based upon competent evidence that the treatment was "required to effect a cure or give relief," or where additional time is involved, that it has "tend[ed] to lessen the period of disability." There should also be findings that the condition treated is, or was, caused by, or was otherwise traceable to or related to the injury giving rise to the compensable claim. 99 C.J.S. "Workmen's Compensation," § 269 (1958).

When the instant case was before Chief Deputy Commissioner Shuford on the issue of defendant's attempted disclaimer of medical benefits, he concluded that defendant was liable "for the payment of all medical expenses incurred as a result of the injury by accident giving rise hereto and is responsible for the payment of *any additional medical treatment which will tend to lessen plaintiff's disability.* [Emphasis added.] 32 N.C. App. 508, 232 S.E. 2d 874 (1977). Such a finding became the law of this case upon this Court's denial of defendant's petition for discretionary review in May, 1977. A finding should have been made in this case, based upon competent evidence, that Dr. Klenner's treatment of plaintiff's condition tended "to lessen plaintiff's disability." The case is therefore remanded to the Court of Appeals for further remand to the Industrial Commission. That agency will consider the record evidence as well as any additional evidence either party wishes to present, and make findings with respect to the duration of plaintiff's emergency, whether plaintiff sought approval of the Commission within a reasonable time after electing to retain the services of Dr. Klenner, the extent to which Dr. Klenner's treatment tended to lessen plaintiff's disability, and whether the condition treated was caused by or related to the injury giving rise to plaintiff's compensable claim.

Defendant's final assignment of error relates to the denial of its motion to take the testimony of Dr. Frank H. Bassett in order

to rebut Dr. Klenner's testimony. Following the hearing before Deputy Commissioner Rush on 18 January 1978, defendant requested that the hearing officer take and consider the testimony of Dr. Frank Bassett of Duke Medical Center. Without taking the testimony of Dr. Bassett, the hearing officer entered his findings and award. Defendant subsequently made a motion that the findings and award be held in abeyance until Dr. Bassett's testimony could be taken. The motion was denied.

Defendant contends that it was denied a full and fair hearing and had no opportunity to present rebuttal evidence. According to defendant, Dr. Bassett would have challenged the effectiveness and duration of Dr. Klenner's treatment of plaintiff.

Ordinarily, the question of whether to reopen a case for the taking of additional evidence rests in the sound discretion of the Industrial Commission, and its decision will not be disturbed on appeal in the absence of an abuse of discretion. *Hall v. Thomason Chevrolet, Inc.,* 263 N.C. 569, 139 S.E. 2d 857 (1965). We adhere to this rule. However, we have concluded that the Commission acted under a misapprehension of law in making its award in that, as hereinabove set forth, there was no evidence or findings to support certain conclusions, and that it is necessary that the Commission take further evidence and make appropriate findings. The admissibility of Dr. Bassett's testimony will then be properly before the Commission in light of our holding herein. Thus we need not, at this point, decide whether the Commission abused its discretion in denying defendant's motion to take Dr. Bassett's testimony. *See Perry v. Furniture Co.,* 296 N.C. 88, 249 S.E. 2d 397 (1978); *Hall v. Thomason Chevrolet, Inc., supra.*

For the reasons stated, the award is vacated, and the case is remanded to the Court of Appeals with direction that it be remanded to the Industrial Commission for further proceedings in accordance with this opinion.

Vacated and remanded.