The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jan N. Pittman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
All stipulations contained in the Pre-Trial Agreement as aforementioned, are incorporated herein by reference. In addition to the stipulations contained in the Pre-Trial Agreement, the parties stipulated to the Form 28B dated April 27, 1990 contained in the Industrial Commission file and received into evidence as Stipulated Exhibit Number One.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On April 23, 1990, plaintiff, a 42-year-old female employed with defendant-employer as a nurse's aid, sustained an admittedly compensable injury by accident when she strained her back while attempting to lift a patient.
2. As a result of plaintiff's compensable injury, plaintiff was paid temporary total disability compensation benefits from April 23, 1990 until May 8, 1990 temporary partial disability compensation benefits from May 30, 1990 until August 21, 1990.
3. Following plaintiff's injury by accident on April 23, 1990, she was treated by Dr. Raymond Sweet, a neurosurgeon, who diagnosed plaintiff's condition on May 3, 1990 as a mild back strain. Dr. Sweet released plaintiff to return to light duty work activities following his examination of her on May 8, 1990. Dr. Sweet last saw plaintiff on May 22, 1990. On all three occasions that plaintiff was examined by Dr. Sweet, he found that plaintiff's complaints of pain were far out of proportion to the physical findings.
4. Plaintiff was dissatisfied with her treatment from Dr. Sweet and the fact that he had returned her to work activities. Plaintiff requested that defendants allow plaintiff to seek treatment from another physician and as a result of this request, plaintiff was referred to Dr. Kenneth Wood, an orthopedic surgeon. Dr. Wood examined plaintiff on May 30, 1990 and corroborated Dr. Sweet's diagnosis of back strain and determined that plaintiff was capable of returning to light duty work at that time working four hours per day. Dr. Wood also found, as had Dr. Sweet, that plaintiff's complaints of pain were out of proportion to the physical findings. In addition, Dr. Wood recommended that plaintiff undergo a program of physical therapy which plaintiff underwent and completed on August 16, 1990. On August 16, 1990, Dr. Wood determined that plaintiff could increase the hours she was working each day to six hours for two weeks and then resume her regular work duties and had not sustained any permanent disability as a result of her injury. As with Dr. Sweet, plaintiff was unhappy with the release to regular work duties and requested another referral.
5. In between seeing Dr. Sweet and first seeing Dr. Wood, on May 8, 1990, plaintiff sought treatment from Dr. Gilbert, another orthopedic surgeon without first obtaining permission from defendants or obtaining approval from the Industrial Commission. The Court notes that it was not until April 20, 1992 that the Form 33 Request for Hearing in this matter mentions plaintiff's request for defendants to pay for medical expenses. Although not introduced into evidence, the undersigned notes that there was a motion filed by defendants' counsel in August 1990 requesting her physical therapy being changed to a facility recommended by Dr. Gilbert; however, said motion was denied by the Chief Claim's Examiner as plaintiff was already undergoing physical therapy. Dr. Gilbert examined plaintiff on May 8, 1990 and determined that she could not return to work at that time. Dr. Gilbert based his opinion on plaintiff's subjective complaints as objective tests performed, consisting of x-rays and bone scans again failed to reveal a source for plaintiff's complaints of pain. By May 29, 1990, Dr. Gilbert also felt plaintiff was capable of work and released plaintiff to return to light duty.
6. In assessing the totality of the medical evidence of record, the undersigned affords more weight to the opinion of Dr. Sweet and finds that plaintiff was capable of returning to light duty employment as early as May 8, 1990. Defendant-employer had light duty work available for plaintiff on May 8, 1990.
7. Plaintiff returned to light duty employment with defendant-employer on June 1, 1990, working approximately four hours per day and receiving partial disability compensation benefits until she resumed her full-time regular job duties in August 1990.
8. On August 29, 1990, plaintiff sustained a second injury by accident when she re-injured her back aggravating her prior back strain when lifting a patient. The parties did not enter into a Form 21 Agreement regarding this second injury and although by the date of hearing in this matter defendants had admitted liability for this re-injury, the date of said admission is unknown.
9. Following her second injury by accident on August 29, 1990, plaintiff was initially seen in the emergency room and placed on light duty for two days. Plaintiff did not contact defendants regarding referral to a physician for this second injury and on her own again saw Dr. Gilbert the next morning. Again plaintiff did not get permission from her employer for this treatment nor did she petition the Industrial Commission for a change of physicians within a reasonable time after seeing Dr. Gilbert. Although Dr. Gilbert's examination revealed no objective findings to support plaintiff's complaints of pain, he released her from work activities. As of September 11, 1990, Dr. Gilbert encouraged plaintiff to return to work; however, plaintiff did not return to work on September 11, 1990 as suggested rather only returning to work on September 26, 1990 after Dr. Gilbert released plaintiff for work activities.
10. Following plaintiff's August 29, 1990 injury and after seeing Dr. Gilbert, plaintiff was again seen by Dr. Wood, the physician who had been authorized by defendants, on September 11, 1990. Although x-rays had already been taken by Dr. Gilbert on August 30, 1990, plaintiff did not inform Dr. Wood that she had previously seen Dr. Gilbert for the August 29, 1990 incident and that he had taken x-rays until the end of the office visit with Dr. Wood. Therefore, plaintiff unnecessarily underwent a second set of repeat x-rays during her visit to Dr. Wood. When plaintiff informed Dr. Wood that Dr. Gilbert was treating her, he declined to treat her any longer. At no time did Dr. Wood refer plaintiff to Dr. Gilbert. Nor did plaintiff after that visit request approval from defendants or the Industrial Commission, within a reasonable time, to see Dr. Gilbert. However, as defendants did not refer plaintiff to another physician, Dr. Wood would not treat plaintiff due to the fact that she was seeing Dr. Gilbert and plaintiff was in need of medical care because of her injury on August 29, 1990; defendants are responsible for the treatment plaintiff received from Dr. Gilbert after September 11, 1990.
11. On September 24, 1990, Dr. Gilbert released plaintiff from his care advising her to return if her problems persisted. Plaintiff did return to work on September 24, 1990 for defendant-employer. As a result of the injury by accident plaintiff sustained on August 29, 1990, plaintiff was unable to engage in her work duties for defendant-employer or in any other capacity from August 29 until September 24, 1990.
12. After her August 29, 1990 injury, plaintiff obtained a new position with defendant-employer working as a unit coordinator. This job was primarily a desk job which allowed plaintiff to sit most of the time. The job required plaintiff to work ten hour shifts, four days per week. Following a training period, plaintiff began this job in November 1990.
13. Plaintiff's supervisor, Cathy Grey, testified that between November 1990 and February 14, 1991, plaintiff had no complaints of back pain while performing her job duties. On February 12, 1991, however, plaintiff was reprimanded because she was inefficient in performing her job. This reprimand was not the result of any physical problems plaintiff had performing her job but was the result of other factors.
14. Although she had not seen Dr. Gilbert since November 1990, plaintiff returned to see Dr. Gilbert on February 14, 1991 complaining of suicidal thoughts and back pain associated with having to work ten hour shifts. As Dr. Gilbert had nothing further to offer plaintiff, he recommended that she either be referred to an internist or to a pain management center. Plaintiff chose to see an internist and Dr. Gilbert referred plaintiff to Dr. Massey. Again, plaintiff did not obtain approval from the defendants or request approval of her treatment by Dr. Gilbert within a reasonable time. Also neither did defendants assign plaintiff to another physician after Dr. Wood refused to treat her. Dr. Massey examined plaintiff on February 15, 1991 and determined that she had a chronic muscle strain. He treated plaintiff conservatively with medication and referred plaintiff to the pain clinic at Charlotte Orthopedic Hospital.
15. At the Charlotte Orthopedic Pain Clinic, plaintiff was the first time he examined plaintiff in May of 1991 that she was capable of performing the unit coordinator desk job, which plaintiff had been performing since November 1990 until February 1991, and could perform that job ten hours per day four days per week.
16. Although the treatment rendered plaintiff by Dr. Gilbert on and after February 14, 1991 was not pre-approved by defendants and plaintiff did not request approval for such treatment from the Industrial Commission within a reasonable time thereafter; as defendants had not assigned plaintiff to a physician and the record is unclear regarding when the defendants deemed this August 29, 1990 incident compensable, the undersigned finds that defendants essentially failed to provide medical care to plaintiff and that plaintiff seeking medical care from Dr. Gilbert was in the nature of an emergency and her actions were reasonable. Defendants are also responsible for the treatment rendered plaintiff by Dr. Massey and the Charlotte Orthopedic Pain Clinic as plaintiff was treated by those providers upon referral from Dr. Gilbert. Furthermore, the treatment rendered plaintiff by Dr. Gilbert, Dr. Massey and Dr. Jaszewski at the Charlotte Orthopedic Pain Clinic tended to effect a cure or give relief for plaintiff's complaints of pain.
17. The treatment rendered plaintiff by Dr. Neimeyer was for a foot condition unrelated to either of the injuries giving rise to this claim.
18. The undersigned finds plaintiff's testimony regarding her disabling back pain after her return to work in September 1990 not credible. In addition to assessing her demeanor as she testified, this finding is based on the fact that plaintiff did not seek any medical treatment between November 1990 and February 14, 1991, the fact that plaintiff never complained of back pain to her supervisor, and the opinion of Dr. Jaszewski that the plaintiff was capable of performing her assigned work as a unit coordinator.
19. In August of 1991, plaintiff applied for and received unemployment benefits; however, although the parties agreed to stipulate to the amounts and dates of said benefits, the parties have failed to so stipulate.
20. Following her discharge from the pain management program, plaintiff did not return to work with defendant-employer. Plaintiff failed to advise defendant-employer that she could return to work when she was released to return to her normal duties in October 1991.
21. In November of 1991, plaintiff began working four hours per day at Home Health Care and continues to be so employed.
22. Dr. Massey's opinion plaintiff was unable to engage in work activities until October 1991 is not deemed controlling in this matter as Dr. Massey was unaware of the specific details of plaintiff's job duties. The undersigned affords greater weight to the opinion of Dr. Jaszewski regarding plaintiff's ability to perform assigned work duties. While the treatment rendered plaintiff by Drs. Gilbert, Massey and Jaszewski tended to effect a cure and provide relief, while plaintiff was receiving said treatment, she remained capable of engaging in her regular assigned work duties with defendant-employer as a unit coordinator.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission finds as follows:
CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on August 29, 1990 which constituted an aggravation of her pre-existing condition which had resulted from the injury she had sustained on April 23, 1990 during her employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff is entitled to temporary total disability compensation benefits from August 29, 1990 through September 24, 1990 for the temporary total disability she sustained as the result of the August 29, 1990 accident. N.C. Gen. Stat. § 97-29.
3. While the treatment plaintiff received from Dr. Gilbert for the April 23, 1990 injury was reasonably and medically necessary to effect a cure of or give relief from said injury, said treatment was not approved by defendants and plaintiff has failed in her burden of proof to establish that she sought the Commission's approval of Dr. Gilbert as her treating physician within a reasonable time following her selection thereof. Defendants, accordingly, are not liable for the expenses of medical treatment rendered plaintiff by Dr. Gilbert for the April 23, 1990 injury.
Also, the treatment rendered plaintiff by Dr. Gilbert on August 30, 1990 following the injury of August 23, 1990 while again reasonably medically necessary to effect a cure of or give relief from said injury was not authorized by defendants and plaintiff has failed in her burden of proof to establish that she sought the Commission's approval of Dr. Gilbert as her treating physician within a reasonable time thereafter.
However, defendants are responsible for the treatment rendered plaintiff by Dr. Gilbert on and after September 11, 1990 following Dr. Wood's refusal to treat plaintiff. Dr. Gilbert's treatment and the subsequent treatment plaintiff received from Drs. Massey and the Charlotte Orthopedic Hospital Pain Clinic upon referral from Dr. Gilbert was reasonably medically necessary to effect a cure of or give relief for plaintiff's complaints of pain arising from the injuries giving rise hereto as plaintiff was in need of medical treatment and defendants by not assigning a new physician to plaintiff were not providing plaintiff with medical treatment. N.C. Gen. Stat. § 97-25. Schofield v. The GreatAtlantic and Pacific Tea Co., 299 N.C. 582 (1988).
4. Plaintiff's claim for additional benefits pursuant to the provisions of the North Carolina Workers' Compensation Act is hereby denied.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay compensation to plaintiff at the rate of $147.57 per week from August 29, 1990 up to and including September 24, 1990. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff for treatment of the injuries by accident giving rise hereto, except for the expenses of treatment rendered by Dr. Gilbert in May and June 1990 and on August 30, 1990, when bills for same shall have been submitted through the defendants to the Industrial Commission and approved by the Commission.
3. A reasonable attorney's fee in the amount of twenty-five percent of the compensation awarded herein is hereby approved for plaintiff's counsel. Said attorney's fee shall be deducted from the compensation benefits payable to plaintiff and shall be paid directly to her counsel.
4. Defendants shall pay expert witness fees in the amounts of $250.00 to Dr. Gilbert, $250.00 to Dr. Sweet, $200.00 to Dr. Neimeyer, and $250.00 to Dr. Jaszewski.
5. Defendants shall pay the costs due this Commission for the initial hearing before the Deputy Commissioner and each side shall bear its own costs for hearing before the Full Commission.
This case is ORDERED REMOVED from the Full Commission docket.
 S/ __________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ __________________ JAMES J. BOOKER COMMISSIONER
S/ __________________ THOMAS J. BOLCH COMMISSIONER
DCS: nw