The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts as those reached by the Deputy Commissioner, with some modification but modifies the conclusions and holding of the Deputy Commissioner. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. Consolidated Freightways, Inc. was the carrier on the risk.
4. The employee's compensation rate was $474.28 per week.
5. The employee sustained a compensable injury on June 17, 1992.
6. The parties stipulated to the plaintiff's medical records from Drs. Howard Guthmann, Charlton N. Owensby, David N. Russell, Nicholas E. Grivas, David N. DuPuy and from Oweida Orthopaedic Associates, Carlisle Chiropractic Clinic, and Keith Clinic of Chiropractic.
7. The issues presented are:
 a) Whether the defendant-employer is liable for additional medical expenses and compensation for medical treatment rendered after April of 1994?
 b) What amount of compensation, if any, is the plaintiff-employee entitled to recover from the defendant-employer for his injuries after October 5, 1992?
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. On June 17, 1992, the plaintiff-employee Carlton Ader sustained a compensable injury to his neck when he slipped and fell backwards while pulling a dolly. The parties entered into an Industrial Commission Form 21 Agreement for Compensation for Disability dated July 1, 1992 which was approved by the Industrial Commission on January 6, 1993.
2. The plaintiff-employee was treated by Dr. Nick E. Grivas, who performed a cervical laminectomy at C6-7. Dr. Grivas released the plaintiff-employee to return to his normal job duties with no restrictions on October 5, 1992.
3. On October 6, 1992, the plaintiff-employee returned to work for the defendant-employer in his former position as a driver earning his previous wages and continued to work in this capacity until September 23, 1993, when he was terminated for job abandonment. At the hearing before the Deputy Commissioner, the plaintiff-employee's supervisor, Jerry Kiser, testified that the plaintiff-employee never demonstrated physical limitations in performing his job duties, nor did he complain of any pain or difficulties in performing those duties. The plaintiff-employee was reprimanded for tardiness and unexcused absences prior to his termination, but he specifically denied that the unexcused absences were caused by any health-related problems or injuries.
4. Beginning on October 11, 1993, the plaintiff-employee worked full-time as a delivery driver for Alliance Products for approximately one month. Don Mason, the plaintiff-employee's supervisor, testified that he observed the plaintiff-employee on a daily basis loading trucks and noted that the plaintiff-employee did not appear to have any physical difficulties performing the job. After approximately a month, the plaintiff-employee was terminated because he failed to report for work.
5. From February 7, 1994 through April 18, 1994, the plaintiff-employee was employed by Dixie Trucking as a full-time truck driver. The plaintiff-employee was terminated for failure to report to work.
6. Plaintiff worked from May of 1994 through February of 1996, as a day laborer for Charlotte Van Storage moving furniture earning between $10.00 and $12.00 per hour and working approximately 55 hours per week. In February of 1996, the plaintiff-employee was formally hired by Charlotte Van Storage to be a local mover and driver. In May of 1996, the plaintiff-employee quit his job at Charlotte Van Storage and began working for Office Depot. At the time of the hearing before the Deputy Commissioner, he was employed in the Inventory Control Department of Office Depot earning $11.05 per hour.
7. On September 7, 1994, the plaintiff-employee underwent an independent medical evaluation at Charlotte Orthopaedic Specialists performed by Dr. David N. DuPuy. Plaintiff-employee specifically denied to Dr. DuPuy that pain was the reason for his decision to stop working for Conway Southern Express. Dr. DuPuy opined that any pain and symptoms that the plaintiff-employee suffered in 1994 were not causally related to the plaintiff-employee's 1992 injury.
8. On March 29, 1995, the plaintiff-employee obtained a second opinion examination from Dr. S. J. Oweida. The plaintiff-employee gave Dr. Oweida a history that he had no neck problems prior to his June 17, 1992 accident and that his symptoms from the June 17, 1992 injury never resolved. Dr. Oweida believed that the plaintiff-employee's symptoms on March 29, 1995 were related to the plaintiff-employee's June 17, 1992 injury, but he stated that his opinion regarding causation would change if there was evidence to show that the plaintiff-employee's symptoms disappeared after his release by Dr. Grivas in October of 1992.
9. Dr. Grivas initially opined that the plaintiff-employee's complaints of pain in 1994 were related to his compensable 1992 injury, but Dr. Grivas testified in his deposition that his opinion was based on the history the plaintiff-employee gave to Dr. Oweida. The plaintiff-employee's history given to Dr. Oweida is contradicted by the hearing testimony of Jerry Kiser, Don Mason, Darrell Power and the plaintiff-employee himself. Although not stated explictedly by the Deputy Commissioner in her Opinion and Award, the results reached in the Opinion and Award show that the Deputy Commissioner did not accept as credible plaintiff's history regarding his injury. The Full Commission, in its discretion, does not find sufficient evidence of record to overrule the Deputy Commissioner's credibility finding.
10. The stipulated medical records submitted by the parties indicate that the plaintiff-employee underwent medical treatment from May 3, 1983 through September 8, 1983 for right neck, shoulder and back pain as a result of an automobile accident. The medical notes also indicate that the plaintiff-employee was involved in an automobile accident on or about March 12, 1991 and sustained injuries to his left neck, shoulder, arm and back. The medical notes reveal that the plaintiff-employee sought no medical treatment from the time he was released to normal job duties on October 5, 1992 until his return to Dr. Grivas on July 24, 1994.
11. The injury and resulting disability from plaintiff's compensable injury by accident have resolved and there is insufficient evidence to causally relate plaintiff's present disability to the June 17, 1992 injury by accident.
12. Although two of the plaintiff's doctors initially related the plaintiff's neck pain in the fall of 1994 to his June 17, 1992 injury, their opinions were expressly based upon the history given by the plaintiff of ongoing pain since his original injury in June of 1992. This history was contradicted by testimony at the hearing before the Deputy Commissioner and medical records submitted; therefore, the Full Commission does not find plaintiff's testimony regarding his medical history to be credible.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of the plaintiff's injuries sustained on June 17, 1992, the plaintiff was disabled from June 17, 1992 to October 6, 1992. After October 6, 1992 the plaintiff worked without pain or other disability related to his June 17, 1992 injury and earned wages equal to or greater than prior to his injury. Thus, the defendants successfully rebutted the presumption of disability by presenting credible evidence that after October 6, 1992, the plaintiff no longer suffered a reduction in wage earning capacity as a result of his June 17, 1992 accident. Tyndall v. Walter Kidde Co.,102 N.C. App. 726, 403 S.E.2d 548, disc. rev. denied, 329 N.C. 505,407 S.E.2d 553 (1991).
2. Once the defendants successfully rebutted the presumption of disability, the burden shifted to the plaintiff, and the plaintiff failed to meet his burden of showing that he suffered a reduction in wage earning capacity after October 6, 1992.Franklin v. Broyhill Furniture Industries, 123 N.C. App. 200,472 S.E.2d 382 (1996).
3. The plaintiff has not proven by the greater weight of the evidence that his medical treatment on or after July 24, 1994 was caused by or related to his June 17, 1992 compensable injury; therefore, the defendants are not liable for the plaintiff's medical treatment. Schofield v. Great Atlantic Pacific TeaCompany, Inc., 299 N.C. App. 582, 595, 264 S.E.2d 56, 65
(1980).
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. The plaintiff's claim for disability benefits after October 6, 1992 is hereby DENIED.
2. The plaintiff's claim for additional medical expenses and compensation for medical treatment rendered after October of 1992 is hereby DENIED.
3. Each side shall pay its own costs.
***********
This the ___ day of December 1998.
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
S/_____________ DIANNE C. SELLERS COMMISSIONER
LKM/jth