The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. Furthermore, defendants' objection to the attachments to plaintiff's brief of documents not in evidence is hereby SUSTAINED. After consideration of the record as it existed before the Deputy Commissioner, the undersigned, in their discretion, were of the opinion that the official record needed to be re-opened for the submission of further evidence, in particular medical records, and if need be, deposition testimony associated with Dr. Elliott, Dr. Bond, and Dr. Padgett. The parties were allowed time within which to submit any additional medical evidence they wished to be considered, and the depositions of Dr. John L. Bond, Volume II, Harry G. Padgett, Ed.D., and Dr. Harold W. Elliot were submitted. These depositions are HEREBY ACCEPTED into the official record for consideration, and the record is, again, DULY CLOSED. However, upon consideration of the record as a whole as it now exists, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner and believe that sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate AWARD.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and of the subject matter.
2. The parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties are subject to the provisions of the Workers' Compensation Act.
4. United States Fidelity and Guaranty Company (USFG) provides workers' compensation insurance coverage to the defendant-employer and was the carrier on the risk in the instant proceeding.
5. Plaintiff suffered a compensable injury to his back on August 6, 1991 and became temporarily totally disabled on that date.
6. Plaintiff became employed with the defendant-employer as a creeler on or about May 25, 1990 and continued to be so employed on August 6, 1991.
7. Plaintiff was employed at an average weekly wage of $250.16.
8. The Industrial Commission approved a Form 24 Application to Stop Payment of Compensation on February 24, 1994.
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. At the time of the initial hearing plaintiff was a 45-year-old male. Plaintiff quit school at age 16 when he had completed the ninth grade. Plaintiff reads at a third grade level.
2. Plaintiff began his employment with the defendant-employer on or about May 5, 1990 as a creeler. Plaintiff was engaged in his duties as a creeler on August 6, 1991.
3. On August 6, 1991, plaintiff sustained a compensable injury arising out of and in the course of his employment with the defendant-employer when he strained his back while bending and lifting a spool of thread out of a buggy.
4. Plaintiff initially sought treatment at the Wilkes Regional Hospital Emergency Room. Plaintiff thereafter began treatment with Dr. John L. Bond on August 12, 1991. Plaintiff was complaining of back pain, limited motion on anterior flexion and exhibited bilateral lumbar muscle tightness. Plaintiff had sustained a lumbar strain.
5. Due to a lack of improvement in plaintiff's condition and plaintiff's complaints of tingling and numbness in his right leg, Dr. Bond referred plaintiff to Dr. David L. Kelly, Jr.
6. Plaintiff was unable to work during the period from August 7, 1991 to July 13, 1992. During that period of August to July, plaintiff was paid compensation for temporary total disability.
7. Dr. Kelly first examined plaintiff on November 11, 1991. At that time plaintiff had pain in his back and down his right leg when his leg was elevated ten degrees. In addition, plaintiff could not flex his back forward to more than 30 degrees without pain.
8. On July 14, 1992, plaintiff returned to work for two hours per day subject to certain work restrictions. Plaintiff was to do no pulling, tugging or lifting of more than 25 pounds. Due to a worsening of plaintiff's symptoms, he was taken out of work on July 22, 1992.
9. Plaintiff was paid temporary partial disability for the period from July 14, 1992 to July 22, 1992.
10. Plaintiff returned to work two to four hours per day from February 8, 1993 until February 24, 1993 and from March 1, 1993 to April 18, 1993. Plaintiff was paid temporary total disability from July 22, 1992 to February 7, 1993 and temporary partial disability from March 1, 1993 to April 18, 1993.
11. Plaintiff returned to work on July 12, 1993 and worked until August 6, 1993. Plaintiff was paid temporary total disability from April 19, 1993 to July 11, 1993 and temporary partial disability from July 12, 1993 to August 6, 1993.
12. On August 10, 1993 plaintiff was seen by Dr. J. Robinson Hicks for a comprehensive spinal evaluation. Dr. Hicks subsequently performed a pentothal pain study which indicated that plaintiff's pain was not based on any physical abnormality.
13. Dr. Hicks further opined that plaintiff could perform the job of string clipper which had been made available to plaintiff. According to Dr. Hicks, to the extent that plaintiff could not do the string clipper job, it was related to the opinions as stated in a psychological evaluation performed on plaintiff.
14. As a result of the work-related injury, plaintiff developed chronic pain syndrome. The fact that plaintiff exhibited inconsistent findings on different examinations is not unusual.
15. Dr. Kelly concluded that plaintiff should be able to perform the job of string clipper and inspector and could move from machine to machine so long as he was not required to bend over. Dr. Kelly placed the following restrictions upon plaintiff's activities: no bending, only occasional squatting, no lifting more than 30 pounds, no sitting or standing in one spot for prolonged periods, and avoiding trips in vehicles.
16. As a result of the August 6, 1991 work-related injury, plaintiff suffers from chronic lumbar strain and chronic pain syndrome and was unable to work because of these conditions from February 8, 1994 until October 16, 1994.
17. On August 10, 1993, plaintiff underwent psychological testing. An initial psychological evaluation was completed by Dr. Brian O'Malley in conjunction with the Comprehensive Spinal Evaluation ordered by the defendants. Dr. O'Malley's initial psychological evaluation concluded that plaintiff is experiencing moderate to severe depression and mild to moderate somatic anxiety. Dr. O'Malley found that plaintiff had developed a chronic pain syndrome which is characterized by preoccupation with his pain, progressive dysfunction, emotional distress and inability to return to work.
18. Plaintiff began psychological treatment with Harry D. Padgett, Ed.D., in March of 1994. Dr. Padgett has concluded that plaintiff has borderline intelligence, reads at grade level three, has major depression, recurrent and somatoform pain disorder and that no areas of choice stood out as possible areas of interest on the Chromile Occupational View-Deck.
19. Harry D. Padgett, Ed.D. stated that his findings and conclusions were consistent with Dr. O'Malley's. Specifically, Dr. Padgett stated that plaintiff's personality may be characterized as masculine-dependent. Traits of a masculine dependent personality include the need to take care of others and a close association of personal worth with physical strength. Harry D. Padgett, Ed.D. opined that plaintiff's back injury has rendered him unable to adequately provide for his family, thus leading to plaintiff's belief that he is a burden or drag on his family. Such beliefs have contributed to plaintiff's depression, paranoia and suicidal thoughts.
20. Harry D. Padgett, Ed.D. concluded that plaintiff's depression was secondary to his pain resulting from his work-related injury in that plaintiff's stress, caused by the pain and weakness in his back, triggers his depression. As a result, plaintiff experiences accentuation of the pain he was already experiencing.
21. Harry D. Padgett, Ed.D. stated that his care had effected an improvement in plaintiff's psychological condition, citing specifically the fact that plaintiff's suicidal thoughts were substantially diminished.
22. Plaintiff returned to work for the defendant-employer on October 16, 1994. At the time of the hearing before the Deputy Commissioner, plaintiff was limited to two hours of work per day and continues to work two hours per day.
23. Plaintiff receives compensation for the two hours per day which he actually works.
24. On January 25, 1995, Dr. Bond told plaintiff that he had a 10 percent permanent partial disability to his back and told him he would see him on an "as needed" basis. Thereafter, Dr. Bond encouraged plaintiff to seek treatment from a psychiatrist in addition to the psychotherapy he was receiving from Harry D. Padgett, Ed.D. Harry D. Padgett, Ed.D. referred plaintiff to Dr. Harold Elliott. Dr. Elliott is currently working with Dr. Padgett in treating plaintiff's emotional and/or psychological difficulties.
25. Plaintiff continued to experience pain, and, subsequent to being placed on an "as needed" or PRN basis by Dr. Bond, sought treatment from a Dr. Eric S. Eanes.
26. The treatment by Dr. Elliott and Dr. Eanes is medically necessary.
27. Medical care provided by defendants to plaintiff has been appropriate and competent. The medical care plaintiff has received from Harry D. Padgett, Ed.D., Dr. Elliott and Dr. Eanes was obtained without the prior approval of the defendant or the Industrial Commission. However, the medical care was and is necessary to give relief or effect a cure for plaintiff, and under the circumstances, plaintiff's request at hearing and in his contentions was reasonably timely.
28. Plaintiff's average weekly wage of $250.16 yields a compensation rate of $167.12.
* * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. On August 6, 1991, plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer in that he injured his back as a result of a specific traumatic incident while performing his assigned work duties. N.C. Gen. Stat. § 97-2(6).
2. As a result of the injury by accident, plaintiff sustained an injury to his back and has also developed a chronic pain syndrome and severe depression. As a result of said injury, plaintiff was totally and temporarily disabled from February 8, 1994, until October 16, 1994, and is entitled to compensation at the rate of $167.12 per week for said period. N.C. Gen. Stat. § 97-29. In addition, plaintiff has been temporary partially disabled from October 16, 1994, and continuing. Thus, plaintiff is entitled to compensation equal to two-thirds of the difference between his actual earnings and $167.12. N.C. Gen. Stat. §97-30.
3. The treatment rendered by Harry D. Padgett, Ed.D. was reasonably medically necessary to effect a cure or give relief from the injury by accident sustained giving rise thereto. Defendant, accordingly, is liable for the expenses of the treatment rendered by Dr. Padgett. N.C. Gen. Stat. §97-25; Schofield v. The Great Atlantic and Pacific TeaCo., 299 N.C. 582 (1980).
4. The treatment by Dr. Eric S. Eanes and Dr. Harold Elliott afforded plaintiff provided some relief from plaintiff's condition resulting from his injury by accident, and plaintiff sought approval of said treatment within a reasonable time thereafter. The defendants are liable for the expenses of the treatment. N.C. Gen. Stat. § 97-25; Schofield v. TheGreat Atlantic and Pacific Tea Co., 299 N.C. 582 (1980).
5. Plaintiff is not permanently and totally disabled. N.C. Gen. Stat. § 97-29.
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Plaintiff is entitled to temporary total disability compensation benefits at the rate of $167.12 per week from February 8, 1994 to and including October 15, 1994.
2. Plaintiff is entitled to temporary partial disability compensation benefits at the rate of two-thirds of the difference between his actual earnings and his compensation rate of $167.12 per week beginning October 16, 1994 and continuing for 300 weeks.
3. The defendants shall pay all reasonable medical expenses incurred by plaintiff as a result of his treatment by Harry D. Padgett, Ed.D., Dr. Eanes and Dr. Elliott.
4. All compensation benefits owing to plaintiff that have accrued shall be paid to plaintiff in a lump sum, subject to the fee for plaintiff's counsel. A fee of twenty-five percent (25%) of the total compensation paid to plaintiff is hereby approved for plaintiff's counsel. Said attorney's fee shall be deducted from plaintiff's accrued compensation benefits and paid directly to plaintiff's counsel.
5. The defendants shall pay the costs of this action, including an expert witness fee in the amount of $150.00 to Dr. J. Robinson Hicks, an expert witness fee in the amount of $125.00 to Dr. Harry G. Padgett, and an expert witness fee of $175.00 to Dr. Harold W. Elliot.
This case is ORDERED REMOVED from the Full Commission docket.
This the 18th day of April, 1996.
 S/ ____________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ____________ DIANNE C. SELLERS COMMISSIONER
S/ ____________ LAURA K. MAVRETIC COMMISSIONER