***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. At all times relevant to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff-employee and the defendant-employer.
3. Berkley Insurance Company of the Carolinas is the compensation carrier on the risk.
4. This is a claim of admitted liability for back and left lower leg injuries, as well as an umbilical hernia, plaintiff sustained at work with defendant-employer September 9, 2002 when he slipped and fell while washing out the back of a trailer. Plaintiff's job with defendant-employer was long distance truck driver. The compensability for plaintiff's injuries was established with a Form 60 Admission dated January 10, 2003. Plaintiff's medical treatment has since been authorized and provided with Dr. Richard DeSandre, Scotland Occupational Health, Dr. Rakesh Chokshi, and more recently, with Dr. John Welshoffer. Temporary total disability has been paid to plaintiff continuously since October 8, 2002 through the date of hearing.
5. Should this claim be deemed compensable, the parties stipulate and agree that the plaintiff's average weekly wage was $950.00 giving rise to a compensation rate of $633.34 weekly.
In addition, the parties stipulated into evidence a packet of documents which included Industrial Commission forms, medical records and reports, employment records and criminal warrants.
The Pre-Trial Agreement dated June 21, 2004, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is fifty-one years old and has a ninth grade education. As of February 2001 he had worked for Maxton Meat Processors for approximately three years as a long distance truck driver. The company made fillers for hot dogs. In February 2001 Maxton Meats filed for bankruptcy and closed the plant for a week. Defendant then reopened the business and rehired plaintiff, who resumed his job duties as a truck driver. He drove an average of three thousand to thirty four hundred miles per week and was paid by the mile driven.
2. On September 9, 2002 plaintiff sustained a compensable injury by accident when he slipped and fell while washing out a trailer in Carthage, Missouri. As a result of the fall, he sustained an umbilical hernia, he injured his low back and he lacerated his legs and chin. He kept working over the next few weeks but continued to experience persistent pain in his abdomen and back, so he subsequently requested medical treatment. His employer then sent him to Scotland Memorial Hospital Occupational Health Services, where he was treated by Dr. Ciacchella and Donna Davidson, a physician's assistant there. When plaintiff was examined on October 10, 2002, his condition was diagnosed as an umbilical hernia, degenerative disc disease and a lumbar strain with radicular symptoms. The physician's assistant ordered an MRI of his lumbar spine and referred him to Dr. DeSandre, a surgeon, regarding his hernia.
3. Dr. DeSandre examined plaintiff the next day and recommended surgery to repair the hernia. Defendants, who admitted liability for benefits under the Workers' Compensation Act for the injury in question, delayed approving the operation until the hernia had become incarcerated. On October 31, 2000 the doctor finally performed the operation. Plaintiff recovered well and on November 15, when he returned to the doctor, he reported feeling well. He was to return to the doctor at twenty-three weeks, but no further medical reports were submitted from Dr. DeSandre, so his subsequent findings and recommendations were not revealed by the evidence.
4. The lumbar MRI ordered by Ms. Davidson revealed evidence of degenerative disc disease in plaintiff's lumbar spine, but no ruptured disc. Dr. Ciacchella and Ms. Davidson therefore treated him conservatively with medication, rest and exercises. On December 4, 2002 Ms. Davidson recommended physical therapy if Dr. DeSandre would allow it, but defendants refused to authorize it, so the order was subsequently cancelled. Plaintiff continued to receive conservative treatment at the occupational health clinic but experienced persistent symptoms of low back pain and numbness in his left leg. Dr. Ciacchella referred him to a chiropractor for treatment and subsequently sent him to Dr. Chokshi, an orthopedic surgeon, for evaluation. On May 14, 2003 Dr. Chokshi concluded that plaintiff had a degenerative condition, that he had reached maximum medical improvement and that he could return to work with a forty-pound weight restriction and with a three-hundred-mile limit on his driving. The doctor released him from orthopedic care, so plaintiff then returned to the occupational health clinic for symptomatic treatment.
5. In June or July 2003 defendant-employer offered plaintiff a job driving back and forth from Claxton, Georgia, in order to pick up loads of chicken carcasses. The trip to Claxton was almost three hundred miles long and would be expected to take approximately eight hours, including the activities at either end of the trip. Plaintiff would then take an eight-hour break and drive the truck back to Maxton. He expected to return to work in this capacity but there was confusion regarding whether the job was an actual position and regarding whether defendants were willing to submit an unidentified form, which was probably a Form 28T. Consequently, he did not report for duty as scheduled.
6. In any event, the job offered by the company was not suitable for plaintiff in that it required him to drive three hundred miles twice in a twenty-four hour period. Sitting for prolonged periods aggravated his pain. In addition, it was expected that changing gears on a ten-speed truck and climbing in and out of the truck would aggravate his symptoms. To require him to drive six hundred miles in a twenty-four hour period was therefore unreasonable and not within the doctor's restrictions. This was the only position offered to plaintiff by defendant-employer.
7. In addition to the periodic appointments at the occupational health clinic, plaintiff also returned to Dr. Chokshi on August 11, 2003 reporting increasing pain. However, he had no neurological deficits on examination, so the orthopedic surgeon had no further treatment suggestions. Dr. Ciacchella and Ms. Davidson continued to examine him periodically and to prescribe medication for him. They maintained his work restrictions. In December 2003 when he experienced a flare-up of back pain with shooting pain into his left leg and foot, plaintiff returned to the clinic earlier than scheduled and saw Dr. McCaskill, who was filling in for Dr. Ciacchella. In view of the persistent symptoms, Dr. McCaskill recommended that plaintiff be evaluated by Dr. Walsh, a physiatrist in Fayetteville.
8. In keeping with its pattern of not approving medical treatment on a timely basis, defendant-carrier did not make a timely decision regarding the referral but finally sent plaintiff to Dr. Welshoffer, a physiatrist in Charlotte. Dr. Welshoffer examined him on May 11, 2004. Plaintiff reported persistent spine-related symptoms with low back and leg symptoms being worse than neck and left arm pain. Dr. Welshoffer diagnosed him with cervical and lumbar discogenic pain with possible radiculopathy and recommended that he undergo MRIs of his cervical and lumbar spine and nerve testing. Once the test results were submitted, the doctor would decide whether epidural steroid injections would be beneficial and would make any other treatment recommendations.
9. As of the date of hearing before the Deputy Commissioner in June 2004, defendants had not authorized the testing recommended by the doctor they had chosen, and no reports were submitted after the hearing to show that any of the testing had been performed. Although Dr. Welshoffer discussed cervical spine problems, which had not previously been addressed and which defendants could have legitimately contested, they apparently also did not authorize the tests for the lumbar condition for which plaintiff had been treated since his fall at work.
10. Following the hearing Dr. McCaskill testified in the case. Although he had not seen plaintiff since the examination in December 2003, he was of the opinion that plaintiff's degenerative disc disease would likely worsen with time and that it was unlikely that plaintiff would be able pass another DOT physical without additional treatment, which was why he had recommended evaluation by Dr. Walsh to see if there were additional treatment modalities which would provide long-term relief. However, until effective treatment was provided, plaintiff would be expected to have difficulties sitting for prolonged periods of time, changing the numerous gears of a tractor-trailer and climbing into and out of a truck. In addition, he could not take certain muscle relaxant medication and drive a tractor-trailer due to the sedating effect of the medication.
11. When Dr. Welshoffer examined plaintiff in May 2004, his work restrictions included allowing plaintiff to change positions as necessary due to the pain associated with prolonged sitting. However, that would be rather difficult for a long distance trucker driver.
12. Since defendants have failed to provide the evaluations and diagnostic testing recommended by Dr. McCaskill and Dr. Welshoffer, plaintiff has not reached maximum medical improvement. Furthermore, since defendants have repeatedly failed to timely provide evaluations and treatment recommended by the doctors they have authorized to treat plaintiff, it appears that plaintiff should be allowed to choose the physiatrist who will treat him and that the insurance carrier should be ordered to provide the diagnostic testing and treatment recommended on a timely basis or be subject to sanctions.
13. Plaintiff has been unable to perform his former duties as a truck driver for defendant-employer since October 2002. Although he was capable of performing certain work activities as of May 2003, his employer did not offer suitable work to him. Considering his education level and the fact that he had been a truck driver for approximately twenty-two years, it appeared that he would require vocational placement assistance in order to obtain suitable alternative employment. There was no evidence that defendants had ever provided him with such assistance.
14. Defendants' defense of in this case have been reasonable and have not been based upon stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following
 CONCLUSIONS OF LAW
1. Plaintiff did not refuse suitable light work in that the job offered by defendant-employer exceeded his restrictions and was not within his physical capabilities. He was therefore justified in refusing to return to work. N.C. Gen. Stat. § 97-32.
2. Plaintiff was entitled to receive continuing compensation for temporary total disability up to the date of hearing. He is entitled to continuing compensation thereafter at the rate of $633.34 per week until he returns to work or until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to the evaluation by a physiatrist of plaintiff's choosing including necessary diagnostic testing. In view of the pattern of unreasonable delay and denial of medical treatment by defendants, plaintiff is hereby allowed to decide between having an evaluation by Dr. Walsh, as recommended by Dr. McCaskill, or completing the evaluation by Dr. Welshoffer, at least to the extent that the testing that he recommended relates to the lumbar spine condition resulting from this injury. Plaintiff is then entitled to prompt and timely authorization of appropriate medical treatment. N.C. Gen. Stat. §§ 97-2(19);97-25; Schofield v. The Great Atlantic Pacific Tea Company, Inc.,299 N.C. 582 (1980).
4. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. N.C. Gen. Stat. §§97-2(19); 97-25.
5. The denial of this claim was not without justification and due cause, and the reasons for the hearing were not engendered by unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Defendants shall pay ongoing compensation to plaintiff for temporary total disability at the rate of $633.34 per week until he returns to work or until further order of the Industrial Commission. This compensation is subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident. Plaintiff is hereby allowed to choose between an evaluation by Dr. Walsh or completion of the evaluation by Dr. Welshoffer. Defendants shall promptly authorize the diagnostic testing by the doctor chosen for the compensable lumbar spine condition and shall promptly and timely authorize appropriate treatment recommended by the doctor or else shall be subject to sanctions.
3. An attorney's fee in the amount of twenty-five percent of the ongoing compensation is approved for plaintiff's counsel. Defendants shall pay him every fourth check.
4. Plaintiff's motion for attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 is denied.
5. Defendants shall pay the costs.
This the 29th day of July 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER