The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hedrick and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications.
*************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. Plaintiff received temporary total disability compensation from 2 September 1993 to 14 April 1994 and from 16 July 1994 to 27 January 1995.
2. A set of records, consisting of plaintiff's medical records and her employment records from defendant-employer and Onslow Memorial Hospital, marked as Stipulated Exhibit Number Two, is admitted into evidence.
 EVIDENTIARY RULINGS
The objections appearing in the depositions of Dr. Hardy and Dr. Suh are OVERRULED.
*************
Based upon the competent evidence of record, the Full Commission adopts the findings of fact of the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was forty-two years old, divorced and the mother of two children. Plaintiff graduated from high school. In 1990, plaintiff received a certificate for completing a training course in home attendant/personal care services. In 1991, she received a certificate of achievement from a cashier training institute. She had also received a certificate for completing 300 hours of training as a nurse aide/nurse assistant. On 21 May 1996, she completed an course of education and clinical experience as a phlebotomist.
2. Plaintiff was employed by defendant-employer as a nurse's assistant. Defendant-employer operated a home for handicapped children and young adults. As a nurse's assistant, plaintiff participated in the care of the patients. At times, plaintiff's duties required her to lift patients.
3. On 26 August 1993, one of plaintiff's patients had a seizure. The patient weighed approximately one hundred eighty pounds. After his seizure, plaintiff helped the patient to stand. As plaintiff was standing with the patient, the patient began having another seizure and fell against plaintiff, pinching plaintiff's left arm behind her back and causing both to stumble but not fall.
4. Plaintiff was initially treated by Dr. Dill for complaints of left arm and shoulder pain. Thereafter, she came under the care of Dr. Gross. Plaintiff first presented to Dr. Gross on 30 August 1993. At that time, plaintiff was experiencing numbness into her left hand and shoulder tenderness. Plaintiff was fitted with a cervical collar, prescribed medications and excused from work. Plaintiff continued under the care of Dr. Gross.
5. On 7 December 1993, a lumbar MRI was performed. On that date, plaintiff had a herniated disc at L5-S1. Plaintiff's herniated disc was caused by the incident on 26 August 1993.
6. Plaintiff returned to work for defendant-employer in April 1994 in a light duty position where she used a computer and made charts for groceries. Plaintiff continued working in this position until 16 July 1994. At that time, she was continuing to receive treatment from Dr. Gross. On 2 August 1994, plaintiff was experiencing neck pain and tingling in her left arm that extended into her left long and index fingers. She was also experiencing low back pain. On 8 August 1994, Dr. Markworth reviewed plaintiff's cervical MRI films. On that date, plaintiff had a herniated disc at C5-C6. Plaintiff's herniated disc at C5-C6 was caused by the incident on 26 August 1993.
7. On 7 November 1994, plaintiff was evaluated by Dr. Hardy, to whom she was referred by Dr. Gross for a neurosurgical consultation. Dr. Hardy initially diagnosed cervical and lumbar disc syndrome. He recommended cervical and lumbar myelograms to define the areas of nerve root involvement. After reviewing these diagnostic studies, Dr. Hardy released plaintiff to return to work on 30 November 1994. Dr. Hardy referred plaintiff to another physician for an evaluation of her left hand numbness.
8. Plaintiff returned to work for defendant-employer on or about 24 January 1995. When she returned to work, plaintiff was assigned to provide care for two patients who plaintiff would not be required to lift because they were able to walk. One of plaintiff's charges was a female. On 5 February 1995, plaintiff undertook to cut this patient's underarm and pubic hair using a pair of scissors. Plaintiff did not have permission to cut the patient's hair. When she cut the patent's pubic hair, she cut the patient's genitalia. The cut was severe enough to cause bleeding.
9. At the time of the incident on 5 February 1995, defendant-employer had a set of personnel policies. The personnel policies allowed for termination of employment for violation of certain rules of conduct. Employees could be terminated for "negligence, abuse, or exploitation involving residents" or "unauthorized abridgment of resident's rights". After conducting an investigation of the 5 February 1995 incident, defendant-employer terminated plaintiff's employment effective 9 February 1995. There is no evidence that the incident for which plaintiff was terminated was a result of her injury on 26 August 1993.
10. Following her termination plaintiff did not seek alternative employment that was consistent with her physical abilities until she completed a course of phlebotomy training on 21 May 1996.
11. On 9 May 1995, plaintiff presented to the North Carolina Spine Center where she was evaluated by Dr. Suh. On that date, plaintiff had pain in both her upper and lower back. Dr. Suh recommended physical therapy and a new medication. He also ordered a lumbar discogram and post-discogram CT scan which were performed on 20 June 1995.
12. On 8 June 1996, plaintiff filed a motion in the Industrial Commission for an order designating Dr. Suh as plaintiff's treating physician. Defendants objected to plaintiff's motion and the Chief Claims Examiner denied plaintiff's motion.
13. On 18 July 1995, Dr. Suh informed plaintiff that she was a candidate for a one level lumbar fusion. Thereafter, plaintiff elected to undergo surgery on 21 July 1995 which consisted of an L5-S1 decompression, stabilization and fusion utilizing instrumentation and a bone graft. The surgery performed by Dr. Suh was treatment for the injury plaintiff sustained on 26 August 1993. This surgery tended to provide plaintiff with relief in that it significantly decreased her low back and leg pain.
14. Plaintiff returned to work as a phlebotomist for Onslow Memorial Hospital on 22 July 1996. At the time of her return to work, plaintiff was capable of earning, and did earn, wages that were greater than or equal to the wages she earned prior to 26 August 1993. On 27 September 1996, Onslow Memorial Hospital terminated plaintiff's employment as a phlebotomist for reasons unrelated to her injury on 26 August 1993, namely unsatisfactory job performance and excessive absenteeism.
15. Plaintiff first sought medical treatment from Dr. Abraham on 18 September 1996. Plaintiff presented to Dr. Abraham due to pain and numbness in her left upper extremity. Dr. Abraham performed a left carpal tunnel release on 11 October 1996.
16. As a result of her injury on 26 August 1993, plaintiff was incapable of earning wages from defendant-employer, or any other employer from 21 July 1995 through 21 July 1996, the date she returned to work as a phlebotomist, earning wages equal to or greater than the wages she earned prior to 26 August 1993.
17. Plaintiff's injury of 26 August 1993 has reached maximum medical improvement, but no physician has examined her to determine the degree of her permanent impairment, if any, since her surgery on 21 July 1995.
18. Plaintiff requested the hearing in this matter seeking a review of the denial of her motion to change treating physicians. Whether plaintiff's left upper extremity condition was related to her injury on 26 August 1993 was not identified in the parties' Pre-Trial Agreement as an issue to be determined by the undersigned. Plaintiff did testify about her left upper extremity condition and her treatment by Dr. Abraham. However, this testimony was very limited. Defendants objected to the deposition testimony of Dr. Abraham based upon a lack of notice that the nature of plaintiff's left upper extremity condition was a subject of the hearing before the undersigned. This objection is sustained.
19. Defendants had good grounds to defend this matter and did not act out of stubborn unfounded litigiousness.
*************
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's inability to earn wages from 10 February 1995 through 20 July 1995 was due to misconduct in her employment with defendant-employer, unrelated to her injury, and her failure to seek alternative employment after her termination and before her surgery on 20 July 1995. Seagroves v. Austin Co. ofGreensboro, 123 N.C. App. 228 (1996).
2. Plaintiff is entitled to have her medical treatment provided by Dr. Suh based on medical necessity. Treatment was required to effect a cure or give relief from the condition which was caused or aggravated by the compensable injury.Schefield v. Great Atlantic and Pacific Tea Co.,299 N.C. 582, 264 S.E.2d 56 (1980). N.C. Gen. Stat. § 97-25.
3. Plaintiff is entitled to payment of temporary total disability compensation at the rate of $129.34 per week from 21 July 1995 through 21 July 1996. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to payment of all medical expenses incurred as a result to her injury on 23 August 1993, including expenses incurred for treatment rendered by Dr. Suh, for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or tend to lessen her period of disability. N.C. Gen. Stat. § 97-2(19); N.C. Gen. Stat. § 97-25.
5. For the reasons set forth in Finding of Fact 18, whether plaintiff has left carpal tunnel syndrome as a result of her injury on 26 August 1993 was not an issue that was properly before the undersigned for decision and no consideration was given to the deposition testimony of Dr. Abraham other than to determine the length of his testimony and area of expertise for the purpose of approving an expert witness fee and, therefore, no ruling is made on this issue since notice was not properly given.
6. Since defendants had good grounds to defend this case, plaintiff's motion to assess plaintiff's attorneys fees against defendants is denied. N.C. Gen. Stat. § 97-88.1.
*************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $129.34 per week from 21 July 1995 through 21 July 1996. This amount shall be paid in a lump sum, subject to the attorney's fee approved in paragraph 3.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result to her injury on 23 August 1993, including expenses incurred for treatment rendered by Dr. Suh, for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or tend to lessen her period of disability.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's attorney and shall be paid as follows: twenty-five percent of the lump sum due plaintiff in paragraph 1 shall be deducted from that amount and paid directly to plaintiff's attorney.
4. Defendants shall pay the costs, including $265.00 to Dr. Abraham
This the ___ day of May 1998.
 S/ ______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ____________ THOMAS J. BOLCH COMMISSIONER
S/ ____________ KIM CRAMER DEPUTY COMMISSIONER
DCS:bjp