The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy and the briefs of the parties. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses in part and affirms in part the Deputy Commissioners Opinion and Award and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as a matter of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers Compensation Act.
2. In April 1995 defendant, City of Raleigh, was self-insured for purposes of workers compensation coverage.
3. On April 14, 1995, the employee-employer relationship existed between the parties.
4. On April 14, 1995, plaintiff was in an automobile accident while in the course and scope of his employment with defendant.
5. At the time of the accident, plaintiff had an average weekly wage of $676.15.
6. Plaintiff reported for light duty on June 7, October 11 and 13, and December 11 and 13, 1995. Plaintiff did not report for light duty during 1996. Plaintiff reported for light duty on January 15, 26, and 27 and February 4, 6, and 14, 1997.
7. The parties agree that medical records and documents set forth in the Pre-trial Agreement are received into the evidentiary record without further authentication.
8. The deposition testimony of Jim Wooten, Clarence Lewis, Dr. Gary Smoot, Dr. George Charron and Dr. Stephen Grubb is a part of the evidentiary record. Additionally, the parties submitted additional stipulated documents and medical records which were received into evidence without further authentication.
9. The issues before the Commission are:
(a.) Whether plaintiff was justified in his refusal of the duty assignments offered by defendant?
(b.) Which physician should be approved as plaintiffs treating physician?
(c.) What additional benefits, if any, is plaintiff entitled to receive?
***********
The Full Commission rejects in part the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. Plaintiff was thirty-three years of age at the time of the hearing before the Deputy Commissioner. He graduated from high school and has credit towards an associate degree from a community college.
2. Plaintiff served in the Air Force for five years and was honorably discharged in January 1988. He began working as a patrol officer for the City of Raleigh in March 1988.
3. Plaintiff was the driver of his patrol vehicle on April 14, 1995, when his vehicle was struck at an intersection by another vehicle. Plaintiff was wearing his seatbelt. The patrol car was struck on the rear passenger side. Immediately following the accident, plaintiff was taken by emergency medical services to Raleigh Community Hospital where his primary complaints were neck pain and general soreness. X-rays were taken and no fractures were found.
4. On May 1, 1995, plaintiff was seen by Dr. George Charron of Dhillon Orthopaedic Clinic. Dr. Charron examined plaintiff and reviewed the x-rays previously taken. Dr. Charrons assessment was that plaintiff sustained a cervical and lumbar sprain and contusions to both knees. He started plaintiff on muscle relaxants and pain medicines and referred him to physical therapy.
5. In the follow-up visit on May 12, 1995, Dr. Charron noted that plaintiffs condition was somewhat improved and that his spine was stable. Dr. Charron planned to continue to treat plaintiffs symptoms.
6. When Dr. Charron saw plaintiff on May 22, 1995, he complained of thoracic pain. Dr. Charron ordered a bone scan to rule out any fracture or abnormalities. The bone scan, performed on May 31, 1995, was negative with no evidence of any fracture or abnormalities.
7. After reviewing the bone scan results, on June 1, 1995, Dr. Charron noted there were no other treatment options. Dr. Charron was of the opinion that plaintiff could attempt a return to work for four hours per day with no lifting greater than ten pounds. When he saw plaintiff next on June 14, 1995, Dr. Charron noted that plaintiff could return to work as his pain level would tolerate.
8. During follow-up visits, Dr. Charron maintained his opinion that plaintiff should return to work. Dr. Charron again stated this in his notes of August 11, 1995. At that time, he referred plaintiff for further treatment to Triangle Spine and Back Care by Dr. Smoot who had evaluated plaintiff earlier.
9. Dr. Smoot first examined plaintiff on July 12, 1995. At that time, he reviewed the prior bone scan results and conducted a physical examination. Plaintiff was in no marked distress and reported no pain in his extremities. Plaintiff had good range of motion through the cervical and scapulothoracic area and minimal pain in the paraspinal area. Dr. Smoots impression was mid-thoracic pain which was probably ligamentous in nature. He suggested physical rehabilitation such as swimming and other exercises.
10. Following Dr. Charrons referral of plaintiff for additional treatment, Dr. Smoot continued to see plaintiff from August 1995 through November 1, 1995. Dr. Smoots evaluation did not change during this time. He was of the opinion that plaintiff was experiencing myofascial pain and that plaintiff should continue to do exercises. He released plaintiff to return to light duty work such as a desk job. Dr. Smoot repeatedly stated in his notes that there was no medical reason plaintiff could not perform light duty work three days a week for half a day. Dr. Smoot did not anticipate that plaintiff would retain any permanent impairment as a result of his injury. As of November 1, 1995, Dr. Smoot did not believe he could offer plaintiff any further medical assistance.
11. After being released by Dr. Smoot, plaintiff did not seek medical treatment for his back for over a year. Although no physician had written a note stating that plaintiff was not capable of work, he did not make an effort to return to work in 1996.
12. Plaintiff requested an independent medical evaluation by Dr. Stephen Grubb. On September 9, 1996, defendant approved a second opinion by Dr. Grubb. However, plaintiff made no effort to see Dr. Grubb until Special Deputy Commissioner Amy L. Pfeiffer ordered him to see Dr. Grubb on January 16, 1997 and suspended plaintiffs benefits until he complied with the ordered medical treatment. Thereafter, plaintiff saw Dr. Grubb on February 11, 1997. Three days later, on February 14, 1997, plaintiff filed a motion for change of treating physician and requested that Dr. Grubb be designated as his new treating physician.
13. When plaintiff saw Dr. Grubb, his primary complaint was pain in his thoracic area. Plaintiff had no pain, numbness or tingling in his arms or legs. Upon physical examination, Dr. Grubb found full range of motion in the thoracic spine with no masses and a normal sensory examination in the upper and lower extremities. Plaintiff was tender in the mid-thoracic spine. Plaintiffs complaints were completely subjective in nature. In fact, there were no objective findings to indicate any significant injury. Dr. Grubbs assessment at that time was thoracic pain probably secondary to degenerative disc disease.
14. In follow-up, Dr. Grubb performed a discogram on June 20, 1997. The results showed that plaintiff had no pain and normal discs at T9-10 through T12-L1. Dr. Grubb was of the opinion that levels T6-7 through T8-9 showed possible posterolateral tears. However, Dr. Smoot was of the opinion that discograms are not a reliable measure of thoracic disc injuries. Dr. Grubb also ordered a post-discogram CT scan. The results showed normal disc spaces at T7-8 through T9-10, with mild degenerative changes at T10-11 and T11-12.
15. In weighing the testimony of the physicians regarding plaintiffs ability to return to work, more weight is given to the testimony of Dr. Smoot and Dr. Charron who both released plaintiff to return to light duty as he was unable to return to his former position as a police officer. Dr. Charron evaluated plaintiff within a couple of weeks of the accident and Dr. Smoot saw plaintiff within the first three months after the accident. Dr. Charron is a board-certified orthopaedic surgeon and Dr. Smoot specializes in physical medicine and rehabilitation. Both are highly qualified to assess plaintiffs condition following the vehicular accident.
16. During plaintiffs first visit with Dr. Grubb, he noted that plaintiff had been "disabled from the time of his injury until the present. His opinion is not supported by the evidence of record. Dr. Grubb did not have the benefit of an accurate history of plaintiffs medical condition. Therefore, his opinion is given little weight. Dr. Grubb had not seen or evaluated plaintiff until almost two years after the accident. Thus, Dr. Grubb was not in the best position to evaluate plaintiffs condition; in particular, he was not in a good position to evaluate plaintiff during the period of time following the accident but prior to February 11, 1997. Dr. Grubb made no objective findings to support his statement that plaintiff was disabled. Moreover, Dr. Grubb gave deposition testimony, concerning the CT scan results, which was inconsistent with the reported test results, which were attached to the deposition as an exhibit.
17. Dr. Grubb suggested that plaintiff should have surgery, a multi level fusion, from T5-T9. The evidence fails to show that the recommended surgery is reasonably necessary or would provide plaintiff any pain relief. According to both Dr. Charron and Dr. Smoot, plaintiff is not a surgical candidate. Again, the testimony of Dr. Charron and Dr. Smoot is accorded greater weight for the reasons stated above.
18. Dr. Smoot has indicated he has no further treatment to offer plaintiff. Dr. Charron is in a good position to see plaintiff for any needed follow-up care. Dr. Grubb has not offered a treatment alternative that appears to be necessary. In addition, Dr. Grubb has not communicated effectively with the defendant-employer regarding plaintiffs condition or reasons for his recommendations. Dr. Grubb is not an appropriate choice for plaintiffs treating physician for any further care.
19. Plaintiff returned to clerical work offered by the defendant-employer only on a few scattered occasions. He worked a few hours on June 7, 1995 and again on October 11 and 13, 1995, and then on December 11 and 12, 1995. Plaintiff made no attempt to report to work during 1996. He reported for light duty on several days in January and February 1997, the last day being February 14, 1997. However, he did not report to work thereafter. He testified that he could not continue in the work assigned because he was in pain. Plaintiff did not make a good faith effort to return to work.
20. Following plaintiffs initial release to return to light duty work by Dr. Charron, defendant-employer consistently offered plaintiff light duty assignments consistent with both Dr. Charrons and Dr. Smoots restrictions. Although plaintiff did not make a valid attempt to perform these assignments, plaintiff is nevertheless able to benefit from the presumption of disability afforded by the Form 21 Agreement. Since defendant failed to prove that the assignments offered constitute suitable employment, plaintiff was under no obligation to perform the assignments. While defendant characterized the grouping of work assignments as not being a "permanent light duty job within the Raleigh Police Department, these assignments appear to be essential regular duties which needed to be carried out by some individual within the Raleigh Police Department. Further, on its face it appears that plaintiff was offered clerical work assignments which may be permanent in nature involving entering computer data, maintaining a log of subpoenas, filing reports, making copies of reports, serving subpoenas by telephone and taking reports by telephone. Not only may these assignments be permanent in nature but they appear to be assignments that would generally be available in the marketplace or at the least skill building assignments which would make plaintiff more attractive in the marketplace. There was no heavy lifting involved and only some minimal occasional bending. However, the evidence of record is insufficient to show plaintiffs wage earning capacity because defendant did not provide sufficient testimony regarding the job assignments or their applicability to the job market in general. For example, there is no testimony as to whether there would be a permanent position if no one other than plaintiff was on light duty or testimony as to what would happen with regard to these assignments if more than one employee at a time was on light duty. It is possible that defendant would have required an employee at all times to perform this work. It is also possible or even likely that the type of clerical duties attempted by plaintiff and the skill they involve comprise jobs generally available in the marketplace. However, there is no testimony to this effect. Furthermore, this situation is distinguishable from a job with a temporary agency. Nevertheless, defendant failed to carry the burden that the work offered was suitable and therefore plaintiff did not unjustifiably refuse suitable employment.
21. Plaintiffs refusal to report to work during the entire year of 1996 and after February 14, 1997 was justified. Nevertheless, plaintiffs testimony that the clerical duty offered by defendant was too strenuous and caused him too much pain is not supported by the greater weight of the objective medical evidence. Furthermore, plaintiffs testimony in this regard is not credible. Plaintiff does not appear to be in acute distress and there are no objective findings of any permanent injury to support his complaints.
22. Since his injury by accident, plaintiff has otherwise made no effort to find gainful employment. Plaintiff would benefit from a vocational rehabilitation program. To ensure that plaintiff continues to be capable of work within the restrictions prescribed by Dr. Charron and Dr. Smoot, plaintiff would benefit from a return visit to Dr. Charron and from a functional capacity evaluation.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiff was released to return to work by two treating physicians and has failed to make a valid attempt to find employment. Nevertheless, the burden is on the defendant to show that plaintiff is either capable of earning wages or has been offered suitable employment which he unjustifiably refused. In this case defendant has failed to show that plaintiff was offered suitable employment available in the marketplace. Therefore, plaintiffs refusal of the light duty assignments offered by defendant was justified. Benefits were inappropriately ceased by Order filed on January 16, 1997 by Special Deputy Commissioner Amy Pfeiffer terminating benefits as of December 20, 1996. N.C. Gen. Stat. 97-32; Saums v. Raleigh Community Hosp., 346 N.C. 760,497 S.E.2d 746 (1997).
2. Plaintiff is entitled to ongoing weekly benefits, subject to a reasonable attorneys fee awarded herein, for total disability from December 20, 1996 or the date defendant actually terminated benefits and continuing until plaintiff returns to work at the same or greater wages or further order of the Commission. N.C. Gen. Stat. 97-29.
3. Subject to the provisions of N.C. Gen. Stat. 97-25.1, plaintiff is entitled to related medical treatment reasonably necessary to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. 97-25.
4. Plaintiff is capable of work within the restrictions prescribed by Dr. Charron and Dr. Smoot. However, plaintiff would benefit from a return visit to Dr. Charron and from a functional capacity evaluation. Furthermore, plaintiff would benefit from vocational rehabilitation. N.C. Gen. Stat. 97-25.
5. Plaintiff has failed to show a valid basis for his request to change his treating physician to Dr. Grubb. N.C. Gen. Stat. 97-25;Schofield v. Great Atlantic Pacific Tea Company, Inc.,299 N.C. 582 (1980).
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner in part and enters the following
 AWARD
1. Subject to an attorneys fee approved herein, defendant shall pay plaintiff ongoing total benefits from December 20, 1996 until plaintiff returns to work at the same or greater wages or further order of the Commission. The accrued amount shall be paid in a lump sum.
2. A reasonable attorneys fee of twenty-five percent (25%) of the compensation due plaintiff is hereby approved to be deducted from the sums due plaintiff and paid directly to plaintiffs counsel. Plaintiffs counsel shall receive twenty-five percent (25%) of the accrued lump sum amount and every fourth weekly compensation check thereafter.
2. Defendant shall pay all related medical and vocational expenses, including but not limited to a return visit to Dr. Charron, a functional capacity evaluation and a vocational rehabilitation program, which are reasonably necessary to effect a cure, provide relief or lessen the period of disability.
3. Defendant shall pay for the second opinion rendered by Dr. Grubb. However, as plaintiff has not shown a valid basis to grant his request for a change of treating physician to Dr. Grubb, defendant is not required to pay for any additional treatment by Dr. Grubb unless the same is authorized by defendant.
 ORDER
1. Plaintiffs request to change his treating physician to Dr. Grubb is hereby, and the same shall be, Denied. Dr. Charron is hereby authorized as plaintiffs treating physician for any additional necessary medical care.
2. Plaintiff is hereby Ordered to comply with all vocational rehabilitation efforts of defendant.
3. Defendant shall pay the costs due the Commission.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
DCS/nwg