***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Deluca, and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission affirms in part and reverses in part the Opinion and Award of former Deputy Commissioner Deluca.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The date of the injury which is the subject of this claim is June 8, 2009;
2. On such date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act; *Page 2 
3. On such date, the Employer-Employee relationship existed between the Plaintiff and Defendant-Employer;
4. On such date, Defendant-Employer employed three or more employees;
5. Defendant-Employer is self-insured with claims being administered by Key Risk Management Services;
6. Employee-Plaintiff's average weekly wage is $1,159.00;
7. Defendants have accepted Employee-Plaintiff's claim for thoracic and lumbar strain, and have denied Employee-Plaintiff's claim for neck and hip injuries; Defendants have paid $772.71 weekly in temporary total disability benefits from August 10, 2009 to the present;
8. Stipulated Exhibits 1-2 and transcripts of the depositions of Drs. Christopher Lin, Sameer Mathur, Marion McMillan and Sylvia Shoffner were entered into the record.
9. The issues for resolution are as follows:
 a. What conditions are causally related to Plaintiff's compensable injury on June 8, 2009?
 b. To what medical and indemnity compensation is Plaintiff entitled as a result of her compensable injury on June 8, 2009?
 c. Whether Plaintiff has misrepresented her physical abilities to the medical providers and her employer?
 d. To what credit are Defendants entitled?
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. Plaintiff is a 43 year old registered nurse. Her employment history includes three years of employment as a travel nurse, and five years of employment with the University of North Carolina.
2. In 1995, Plaintiff was out of work for several months as the result of a work-related low back injury. Plaintiff received treatment for this injury from her then primary care physician and a neurosurgeon. An MRI of Plaintiff's spine taken on May 15, 1995 revealed a somewhat degenerated disc at L5-S1. On July 6, 2004, Plaintiff completed a patient intake form at Ellingson Family Chiropractic on which Plaintiff indicated that she had a "herniated disc at L5-S1." Plaintiff sought treatment for upper and lower back problems with a chiropractor in 2004, 2005, 2007, 2008, and 2009.
3. Plaintiff began working for WakeMed in 2007, first in the neonatal department in Cary, North Carolina, and then at the MRI department in Raleigh, North Carolina. Her job involved sedating pediatric patients, starting IVs on adult patients, and assisting with sedation of adult patients as needed.
4. On June 8, 2009, Plaintiff received a call indicating that another employee needed help in a CT scan room. When Plaintiff arrived at the CT scan room she observed a pale and unresponsive woman slumped over in a chair. Plaintiff and the other employee commenced a "sitting transfer" of the patient four feet to the door, and then to a stretcher located just outside of the door. While performing the transfer, the other employee bumped into the door frame and let go of the patient. This tipped the patient into Plaintiff's arms, and Plaintiff "jerked to save [the patient's] head from hitting the floor."
5. Plaintiff began to experience low back pain one and one-half hours after the incident while performing paperwork. She reported her injury that day to Defendant-Employer's *Page 4 
Occupational Health office and was referred to Concentra, where she reported upper and lower back problems. Plaintiff was examined by Dr. Michael Landolf, who diagnosed her with lumbar and thoracic strains and prescribed a muscle relaxant, ice, and physical therapy. Dr. Landolf released Plaintiff to light duty employment, restricting Plaintiff's pushing, pulling and repositioning of patients.
6. On June 9, 2009, Plaintiff had a scheduled day off of work. Plaintiff returned to work on June 10, 2009 and attempted to perform light duty paperwork, however, she was limited by pain and left after one hour. Between June 9 and June 20, 2009, Plaintiff worked a total of 25.7 hours. Between June 21 and July 4, 2009, Plaintiff worked a total of 9.5 hours. Plaintiff knew that light duty work was available for her on a continuing basis.
7. Plaintiff continued to receive treatment at Concentra. On June 15, 2009, she was examined by Dr. Landolf and reported pain in the left low back with some radiation to the front of the left hip area. Dr. Landolf recommended MRI studies of the low back and left hip and continued Plaintiff's previously assigned work restrictions. On June 19, 2009, MRI studies were performed. The radiologist who read the MRI opined that it indicated a possible mild strain but no tear, no avascular necrosis, and no degenerative joint disease. Mild gluteus minimus tendonitis was also noted. The lumbar MRI revealed chronic degenerative changes at the lower lumbar levels, with mild foraminal narrowing on the left at L3-4, and mild narrowing of the lateral recesses at L4-5. On June 22, 2009, Plaintiff returned to Dr. Landolf, who was of the opinion that there was "no significant pathology, at least acute pathology, noted on the lumbar MRI." Dr. Landolf modified Plaintiff's restrictions to allow sitting 50% of the time. Dr. Landolf saw Plaintiff on five different occasions between June 8, 2009 and July 17, 2009. *Page 5 
8. When Plaintiff failed to improve with his treatment, Dr. Landolf recommended that Plaintiff see a physiatrist such as Dr. Scott Sanitate. Plaintiff instead requested to be seen by Dr. Christopher Lin with Cary Orthopaedic. Defendant-Carrier authorized an appointment with Dr. Lin, and on July 10, 2009, Dr. Lin evaluated Plaintiff and diagnosed her with lumbar, neck/cervical and thoracic spine pain, as well as lumbar and thoracic strain/sprain and myofascial syndrome. Dr. Lin recommended that Plaintiff continue with physical therapy in addition to a trial of Robaxin. Dr. Lin also assigned sedentary duty restrictions of no lifting greater than 10 pounds, no repetitive bending, lifting, twisting, no prolonged walking and changing positions as needed.
9. Plaintiff also treated with her primary care physician, Dr. Sylvia Shoffner. This treatment was not authorized by Defendants. Plaintiff had been treated by Dr. Shoffner for anxiety previously, and was prescribed anti-depressants from 2005 forward. Dr. Shoffner diagnosed lumbago and noted that Plaintiff was experiencing anxiety and increased stress related to her injury. Dr. Shoffner signed Plaintiff's FMLA paperwork and long-term disability application certifying that Plaintiff was unable to work in any capacity. Dr. Shoffner testified during her deposition that her opinion that Plaintiff was unable to work was based solely on Plaintiff's subjective complaints and Plaintiff's own reports of her inability to work. Dr. Shoffner also opined that Plaintiff's anxiety was stable as of January 27, 2010.
10. On June 25, 2009, Dr. Shoffner referred Plaintiff to Dr. Mark Curzan of Cary Orthopaedic for her left hip pain. Defendants did not authorize treatment with Dr. Curzan. Dr. Curzan diagnosed greater trochanter traumatic bursitis of the left hip and lumbar strain with some left-sided radicular pain, and assigned work restrictions of no lifting over 10 pounds, no twisting, and no more than four hours of work per day. On July 23, 2009, Plaintiff returned to *Page 6 
Dr. Curzan, who stated that he was not clear as to the etiology of Plaintiff's hip pain, and noted that the lumbar MRI demonstrated "a mid-lumbar disc with extrusion to the left." Dr. Curzan subsequently ordered an arthrogram of the left hip which did not reveal a labral tear. At each appointment Dr. Curzan noted, pursuant to his physical examination, that Plaintiff had full range of motion of her hip, negative straight leg raise, normal gait and good strength. Although Dr. Curzan initially noted that Plaintiff reported tenderness on palpation, by July 30, 2009 he noted that she had no pain with palpation. Plaintiff saw Dr. Curzan four times between June 25, 2009 and August 11, 2009.
11. Dr. Curzan referred Plaintiff to Dr. Sameer Mathur for evaluation of her lower back symptoms. Plaintiff presented to Dr. Sameer Mathur on July 31, 2009, and August 12, 2009. Defendants did not authorize treatment with Dr. Mathur. At the first appointment, Plaintiff complained chiefly of neck pain, back pain, right arm pain, and right leg pain. Plaintiff gave Dr. Mathur a history of neck pain, mid-back pain, pain going down both arms and legs with numbness and tingling, as well as vaginal pain. Dr. Mathur performed a complete physical examination of Plaintiff's cervical spine and noted normal muscle strength, sensation, and reflexes. The same was true of his physical examination of her lumbar spine. Dr. Mathur noted mild chronic degenerative changes on the MRI of Plaintiff's lower lumbar spine.
12. After cervical and thoracic MRIs were taken, Plaintiff returned to Dr. Mathur on August 12, 2009 with complaints of neck pain, bilateral groin pain and vaginal pain. Again, Dr. Mathur's physical examinations of Plaintiff's cervical and lumbar spine were normal. Upon review of her cervical and thoracic MRIs, Dr. Mathur noted that Plaintiff's cervical spine showed a prominent bulge at C6-7, but that there were no bulges on the thoracic study. Dr. Mathur did *Page 7 
not recommend any surgery, but did refer Plaintiff for physical therapy and to Dr. Smoot for possible injections.
13. On August 10, 2009, Plaintiff returned to Dr. Lin and reported that she had been unable to work due to pain. Dr. Lin wrote Plaintiff out of work based solely upon the symptoms reported by Plaintiff. Dr. Lin recommended a functional capacity evaluation and evaluation and treatment by a neurologist or pain specialist. Based upon Dr. Lin's note, on August 10, 2009, Plaintiff began receiving temporary total disability benefits at the rate of $772.71 per week, which benefits continue.
14. Plaintiff sought another orthopedic evaluation on her own by presenting to Dr. William Lestini on September 3, 2009. Defendants did not authorize treatment with Dr. Lestini. Plaintiff reported constant neck pain radiating into both arms down to her fingers, low back pain radiating into her groin and thigh on the left, numbness and tingling in her arms and legs, vaginal spasms, and rectal pain.
15. Dr. Lestini's physical examination of Plaintiff revealed some tenderness, good cervical range of motion, good lumbar range of motion except for limitation on side bending, normal strength, some decreased sensation in the left leg, equal and symmetric reflexes, negative straight leg raise bilaterally, negative toe signs, and absence of clonus. Dr. Lestini noted that Plaintiff did have mild chronic degenerative changes in her neck and lumbar spine that could be symptomatic, but that Plaintiff was aware that those changes could exist even if she did not complain of pain. In the event that Plaintiff wished to pursue further studies, Dr. Lestini recommended a discogram and suggested EMG and nerve conduction studies to see if there was objective evidence for nerve irritation or damage. *Page 8 
16. Plaintiff began receiving long term disability benefits in September 2009 at the rate of $1,830.00 per month. Long term disability is an employer-funded benefit.
17. Plaintiff's last appointment with Dr. Lin occurred on October 13, 2009. On that day, Plaintiff reported neck pain, low back pain, thoracic pain down her legs to the bottom of her feet and numbness in her hand. She reported to Dr. Lin that she could not do any grocery shopping, that she could not sit, and that she had tried sedentary duty and could not tolerate it. Dr. Lin wrote Plaintiff out of work once again on October 13, 2009. Plaintiff did not inform Dr. Lin that she had traveled by airplane to Nova Scotia, Canada on September 16, 2009, returning on October 11, 2009. Dr. Lin opined during his deposition that the known demands of Plaintiff's travel were inconsistent with Plaintiff's description of her physical abilities.
18. On November 2, 2009, Plaintiff was examined by Dr. Susan Glenn of Raleigh Neurology Associates. Plaintiff did not seek authorization from Defendants for this treatment. Dr. Glenn recommended nerve studies which did not show evidence of pinched nerves, and Dr. Glenn therefore recommended a trial of epidural injections for control of Plaintiff's pain symptoms.
19. Plaintiff participated in a Functional Capacity Evaluation on December 8, 2009. As part of the evaluation, Plaintiff's actual job description was reviewed and was determined to fall within the light physical demand category. During the evaluation, Plaintiff demonstrated limited tolerance of repetitive bending, squatting, sustained overhead reaching, stair climbing, and material handling due to reports of pain, apprehension, early fatigue, and probable lumbar mechanical dysfunction. Self-limiting effort and inappropriate illness behaviors were noted, including overt pain behaviors demonstrated during testing. The evaluation indicated an ability to perform physical activity at the sedentary demand level. *Page 9 
20. On January 11, 2010, Plaintiff was examined by Dr. Marion McMillan, an anesthesiologist and internal medicine doctor at Foothills Pain and Anesthesia Associates in Seneca, South Carolina. Plaintiff did not request that Defendants authorize treatment with Dr. McMillan, and Plaintiff did not seek Industrial Commission approval for Dr. McMillan to be designated as an authorized treating physician. On January 12, 2010, Dr. McMillan performed bilateral lumbar facet block injections at the L3-5 levels for diagnostic evaluation of Plaintiff's pain. The injections did not produce relief from Plaintiff's symptoms, and, therefore, Dr. McMillan performed a lumbar discogram on January 14, 2010. The results of the discogram indicated a possibility of a pinched nerve at L4-5 that would be responsible for Plaintiff's left leg symptoms, and that the disc at L5-S1 was causing mid-line back symptoms. On February 25 and 26, 2010, Dr. McMillan performed a left-sided endoscopic microdiscectomy and foraminotomy at the L4-5 level, a left laser discectomy at the L5-S1 level, and a left lumbar facet rhizotomy at the L3-5 levels. Because Plaintiff returned to North Carolina, Dr. McMillan did not see her in follow-up, however, his office contacted Plaintiff on February 27, 2010 and she reported that she was doing well and that the surgery had helped. Dr. McMillan opined that he expected Plaintiff to be able to return to work in some capacity around April 30, 2010.
21. Plaintiff has failed to establish that the neck condition that she was treated for after June 25, 2009 was related to the June 8, 2009 incident. Plaintiff treated for neck symptoms for years prior to the date of accident. None of the doctors who treated Plaintiff found any objective sign of an acute injury. All physical examinations were virtually normal. No medical opinion was offered to relate Plaintiff's cervical treatment after June 25, 2009 to the incident of June 8, 2009. Also, Plaintiff has not pursued cervical spine treatment beyond complaining of her neck while seeking treatment for her lower back. *Page 10 
22. Plaintiff has failed to establish that her hip condition was related to the June 8, 2009 incident. No medical opinion was offered to relate Plaintiff's hip condition to the incident, and Dr. Curzan noted that the etiology of Plaintiff's hip pain was unknown.
23. The Full Commission gives more weight to the testimony of Dr. Lin than to that of Dr. McMillan with regard to Plaintiff's need for medical treatment for Plaintiff's accepted low back condition and as to any period of disability resulting from that condition.
24. Based upon all of the competent, credible evidence of record, the Full Commission finds that the June 8, 2009 incident caused an aggravation of Plaintiff's pre-existing degenerative lumbar condition. However, Dr. Lin, the only physician authorized to treat Plaintiff for this condition, opined that Plaintiff was capable of "at least some sort of work" during the time period that he treated her. Dr. Lin's decision to write Plaintiff out of work was based solely upon symptoms reported by Plaintiff.
25. Based upon all of the competent, credible evidence of record, the Full Commission finds that the lumbar injury sustained by Plaintiff as a result of the June 8, 2009 incident, and the resulting pain symptoms, aggravated her pre-existing stress and anxiety.
26. Based upon the competent medical evidence, the Full Commission finds that Plaintiff's lumbar injury, as well as her resulting pain, stress and anxiety, rendered Plaintiff incapable of earning wages in competitive employment from August 10, 2009 through January 27, 2010, when Dr. Schoffner opined that Plaintiff's anxiety was stable.
 ************
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW *Page 11 
1. On June 8, 2009, Plaintiff sustained an injury to her low back arising out of and in the course of her employment as a direct result of a specific traumatic incident of her assigned work. N.C. Gen. Stat. § 97-2(6). Furthermore, Plaintiff's pre-existing stress and anxiety conditions were aggravated by her compensable injury. Id.
2. As a result of her June 8, 2009, injury by accident, Plaintiff is entitled to have Defendants pay for all related and authorized medical expenses incurred through her treatment with Concentra and/or Dr. Lin. However, Plaintiff has failed to show that medical expenses related to her alleged hip and neck conditions are reasonably related to her compensable injury. N.C. Gen. Stat. §§ 97-2(19), 97-25.
3. Pursuant to N.C. Gen. Stat. § 97-25, an injured employee may select a physician of (her) own choosing to attend, prescribe and assume the care and charge of (her) case, subject to the approval of the Industrial Commission. In the event plaintiff seeks to change her treating physician, she must make the request for approval of the Commission within a reasonable time and there must be competent evidence that the treatment was required to provide relief, effect a cure or lessen her period of disability. Thus, Plaintiff in the instant case is not entitled to have Defendants pay for the unauthorized medical treatment provided by Drs. Shoffner, Curzan, Mathur, Lestini and McMillan. N.C. Gen. Stat. § 97-25;Schofield v. Great Atlantic and Pacific Tea Co.,299 N.C. 582, 264 S.E.2d 56 (1980).
4. As a result of her compensable injury, Plaintiff was incapable of earning wages in competitive employment from August 10, 2009 through January 27, 2010. Plaintiff is therefore entitled to disability compensation from August 10, 2009 through January 27, 2010 at a rate of $772.71 per week. Plaintiff has failed to show that any disability she may have suffered following January 27, 2010 is due to her compensable injury. N.C. Gen. Stat. § 97-29. Hilliard v. ApexCabinet Co., *Page 12 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982); Russell v. LowesProduct Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
5. Defendants are entitled to receive a credit for any short and long term disability compensation paid to Plaintiff. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay Plaintiff temporary total disability compensation at a rate of $772.71 for the period of August 10, 2009 through January 27, 2010, subject to the attorney's fee set out below. Defendants are entitled to a credit against any future compensation to which Plaintiff may become entitled for all short or long term compensation paid to date, and for wages and leave pay received by Plaintiff after August 10, 2009.
2. Defendants shall pay for all authorized medical expenses incurred by Plaintiff through her treatment with Concentra and Dr. Lin as a result of the June 8, 2009 injury by accident. Plaintiff's claims for medical expenses related to her alleged hip and neck conditions and for treatment with Drs. Shoffner, Curzan, Mathur, Lestini and McMillan, whose treatment of Plaintiff was not authorized, are denied.
3. Defendants shall bear the costs. This shall include an expert witness fee in the amount of $750.00 to Dr. McMillan.
This ___ day of May, 2011.
 S/___________________ *Page 13 
LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER